300 P.2d 476

**TRANSPORT TRUCKING COMPANY, a Corporation, Plaintiff-Appellant,**

v.

**FIRST NATIONAL BANK IN ALBUQUERQUE, a Corporation, Defendant-Appellee.**

**No. 6067.**

Supreme Court of New Mexico.
July 23, 1956.

Quincy D. Adams, James H. Foley, Albuquerque, for appellant.

Richard G. Cooper, Iden & Johnson, Albuquerque, for appellee.

GALLEGOS, District Judge.

At the close of the plaintiff's case, and after admission of some evidence in behalf of the defendant by stipulation of counsel for the parties, the defendant moved that the case be dismissed and the District Court announced that it found the issues

in favor of the defendant and dismissed the case. The plaintiff has appealed.

The plaintiff, appellant herein, Transport Trucking Company, a Corporation, brought suit in the District Court of Bernalillo County against appellee herein, a defendant below, First National Bank in Albuquerque, and one Ray P. Craig, seeking to recover $2,911.80. Craig defaulted and judgment was entered against him for the full amount. It is admitted that Craig has paid to the plaintiff $950 on the judgment.

The Transport Trucking Company was engaged in the business of transporting automobiles for dealers from points in Missouri and Kansas to points in New Mexico. The President of the plaintiff corporation, Jack Barton, lived in Oklahoma City. Craig was vice-president and general manager of the corporation, living in Albuquerque and transacting the corporation business there such as soliciting and collecting freight accounts owing to the plaintiff.

There was a bank account in the name of the plaintiff in the defendant bank. Craig and his wife also had a joint personal account with the defendant bank. Craig, in the course of plaintiff's business, collected from time to time sums due to the plaintiff represented by checks payable to the plaintiff. The sum in controversy was deposited by Craig, during various periods of time, in the defendant bank in his personal joint account which he had with his wife. To deposit the checks, Craig endorsed plaintiff's firm name, Transport Trucking Company, by him. In many instances, Craig would draw a draft from the money deposited to his personal account, which was a joint personal account with his wife, and send the draft to the plaintiff's office in Kansas City. Barton, the president of plaintiff corporation, testified that Craig had been instructed to get a cashier's check or draft payable to the company upon collecting from customers or dealers whose financial standing might be considered risky. Craig appropriated to his own use money belonging to the plaintiff which he had deposited with the defendant bank in the personal joint account mentioned, a small sum was checked out by Craig's wife. Craig became personally indebted to the defendant bank and gave defendant a note on his debt and a portion of this debt was paid by Craig to the defendant out of money belonging to the plaintiff which Craig had deposited in the personal joint account which he and his wife had with the defendant.

From the time that plaintiff was organized in 1948, Craig had been collecting for the trucking company and in April 1948, a signature card was left with the defendant bank signed by the then officers of the plaintiff company, including Craig, addressed to the defendant bank stating "Below please find duly authorized signatures,

which you will recognize in the Payment of funds or the transaction of other business on our account", the plaintiff corporation name "Transport Trucking Company" appearing at the top of the card, although no formal action had been taken by the Board of Directors of plaintiff's corporation to authorize the signing of the signature card.

Barton, who bought all of the stock of plaintiff in 1953, was not connected with the corporation in 1948, however, the signature card mentioned which was left with the defendant bank had not been withdrawn or revoked.

Barton became aware in January 1954 that Craig had misappropriated money belonging to the corporation and he, Barton, loaned Craig $2,400 or $2,500 to pay the company for the defalcations and for some five or six months thereafter Barton permitted Craig to work for the corporation in the same capacity as previously.

Barton stated that he had a conversation with Woodward, an officer of the defendant bank, and had told Woodward what Craig had been doing but Barton did not testify as to any details concerning the conversation with Woodward, and Barton did not instruct Woodward to not accept checks payable to the plaintiff which might be presented to the bank by Craig and did not request Woodward that Craig's name be taken out of the signature card. Barton was not even sure as to when he talked to Woodward and all of Barton's testimony on this line was indefinite and unsatisfactory.

The Court made the following findings:

"That Transport Trucking Company, plaintiff herein, had during all times material to the issues of this case, a checking account at the First National Bank in Albuquerque, New Mexico.

"That Ray P. Craig, co-defendant in this action, was an officer of the Transport Trucking Company, a corporation, at all times material to the transactions complained of in plaintiff's complaint, up to July 1, 1954, and at all times material to the transactions complained of, had authority in connection with plaintiff's checking account at the First National Bank In Albuquerque to sign checks for and in behalf of plaintiff, Transport Trucking Company, a corporation, and to endorse checks by third parties payable to Transport Trucking Company, a corporation.

"That the defendant, Ray P. Craig, had a personal checking account at the First National Bank in Albuquerque during all times material to the transactions complained of in plaintiff's complaint, which account was a joint account with his wife.

"That the defendant, Ray P. Craig, acting in a fiduciary capacity, made

deposits in the First National Bank in Albuquerque, to his personal credit, of checks payable to his principal and endorsed by him, at which time the defendant, Ray P. Craig, was empowered to endorse such checks.

"That the evidence adduced by the plaintiff, Transport Trucking Company, a corporation, was insufficient to establish the fact that the defendant, First National Bank In Albuquerque, had actual knowledge that the fiduciary, Ray P. Craig, was committing a breach of his obligation as fiduciary in making such endorsements and deposits, and such evidence adduced by plaintiff was insufficient to establish the fact that the defendant, First National Bank In Albuquerque, had knowledge of such facts that its action in receiving the deposits and paying the checks amounted to bad faith.

"That there was no evidence introduced by the plaintiff that the checks payable to the Transport Trucking Company were endorsed by Ray P. Craig as fiduciary and delivered and transferred to the defendant, First National Bank In Albuquerque by the said Ray P. Craig as fiduciary of the Transport Trucking Company, plaintiff, in payment of, or as security for a personal debt of the fiduciary to the actual knowledge of the First National Bank In Albuquerque, nor were any such checks transferred to said bank in any transaction known by said bank to be for the personal benefit of the fiduciary."

The Court concluded that the plaintiff had failed to sustain the burden of proof and since the conclusions of the Court are brief, we will quote them:

"It is immaterial that the defendant, Ray P. Craig, had a joint checking account with his wife in the First National Bank In Albuquerque to which he deposited checks payable to the Transport Trucking Company and endorsed by him, since such account is considered a personal account of the defendant, Ray P. Craig.

"The plaintiff has failed to sustain the burden of proof in this case, and at the conclusion of plaintiff's evidence the Court, as a matter of law, finds that judgment for the defendant, First National Bank In Albuquerque, a corporation, should be and is hereby entered, dismissing this action as to the defendant, First National Bank In Albuquerque, a corporation, and awarding to it costs."

Section 33–1–9, 1953 New Mexico Statutes Annotated of the Fiduciary Act provides:

"If a fiduciary makes a deposit in a bank to his personal credit of checks drawn by him upon an account in his

own name as fiduciary, or of checks payable to him as fiduciary, or of checks drawn by him upon an account in the name of his principal if he is empowered to draw checks thereon, or of checks payable to his principal and endorsed by him, if he is empowered to endorse such checks, or if he otherwise makes a deposit of funds held by him as fiduciary, the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary; and the bank is authorized to pay the amount of the deposit or any part thereof upon the personal check of the fiduciary without being liable to the principal, unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check, or with knowledge of such facts, that its action in receiving the deposit or paying the check amounts to bad faith."

And, Section 33–1–1(2) of the Act provides:

"A thing is done 'in good faith' within the meaning of this act, when it is in fact done honestly, whether it be done negligently or not."

■ The sections of the Fiduciary Act mentioned and other sections of the Act indicate exculpation or the relieving of a bank when it is sought to be charged by a fiduciary's principal. The Act provides that the bank may be chargeable when its action in receiving the deposit or paying the check amounts to bad faith, such action of the bank must be willful and even though there be suspicious circumstances, the failure to make inquiry does not constitute bad faith on the part of the bank. The purpose of the Uniform Fiduciary Act was to facilitate banking transactions by relieving a depository, acting honestly, of the duty of inquiry as to the right of its depositors, even though fiduciaries, to check out their accounts.

Roswell State Bank v. Lawrence Walker Cotton Co., Inc., 56 N.M. 107, 240 P.2d 1143; Davis v. Pennsylvania Co., 337 Pa. 456, 12 A.2d 66; Colby v. Riggs National Bank, 67 App.D.C. 259, 92 F.2d 183, 114 A. L.R. 1088.

The appellant complains and assigns as error:

(a) That the Court erred in dismissing the action upon motion of the defendant.

(b) That the Court committed error in not making certain specific findings and conclusions requested by appellant.

■ We will answer the second question first. The trial court made sufficient and proper findings of ultimate facts and this is all that is required. Rules of Civil Procedure 21–1–1(52) (B) (2).

■ As to the first question, we agree with the appellant that it is the law that on

a defendant's motion to dismiss at the close of plaintiff's case, the evidence must be considered in a light most favorable to the plaintiff.

■ There is also the rule of law that every presumption is indulged in favor of the correctness of the judgment. Consolidated Placers v. Grant, 48 N.M. 340, 151 P.2d 48.

■ In this case, the record fails to show that the bank acted dishonestly, or that it received the deposits or paid the checks with actual knowledge that the fiduciary was committing a breach of his obligation, or that the bank had knowledge of such facts that its action in receiving the deposits or paying the checks amounted to bad faith.

We have carefully examined the evidence and the record in this case and we are convinced that the trial court was correct in dismissing the case as the plaintiff did not submit sufficient competent evidence to support a judgment in its favor.

The conclusion reached makes it unnecessary to discuss other points argued by the appellant.

Finding no error the judgment of the trial court should be affirmed.

It is so ordered.

COMPTON, C. J., and LUJAN, SADLER and McGHEE, JJ., concur.