CHARLES M. JOHNSON *et al.*, Plaintiffs-Appellants, *v.* THE CITIZENS NATIONAL BANK OF DECATUR, Defendant-Appellee.

(No. 12871;

Fourth District—August 7, 1975.

*Rehearing denied September 9, 1975.*

J. C. Ermentrout, of Champaign, for appellants.

Michael J. Kehart and Richard J. Welsh, of Webber, Welsh, Kehart & Shafter, of Decatur, for appellee.

Mr. PRESIDING JUSTICE SIMKINS delivered the opinion of the court:

Plaintiffs brought suit to recover funds which, they alleged, had been wrongfully credited to the personal account of an employee of Federal North Iowa Grain Company (hereinafter Federal) by defendant Citizens National Bank (hereinafter Bank or Citizens). The circuit court ruled that the provisions of the Uniform Fiduciaries Act provided the Bank with a complete defense. Plaintiffs are appealing that decision.

The parties stipulated to the only facts which were presented to the trial court. Merle Wilham was an employee of Federal and was authorized to draw drafts in the name of Federal. From November of 1964 to January of 1967, Mr. Wilham drew the 23 drafts in question here. They totaled $22,574.35. These drafts were attached to the stipulation. Below is an example. They varied only in amount and date.
"

| Federal North Iowa Grain Co. Radford, Illinois | |
|---|---|
| | Date   1-15-65 |
| Pay to the order of Citizens National Bank | $418.50 |
| the Sum of $418 and 50 cts | Dollars |
| Payable through Continental Illinois National Bank and Trust Company of Chicago, Illinois | Federal North Iowa Grain Co. Merle W. Wilham an authorized signature |

"

Mr. Wilham had a personal checking account with Citizens. Pursuant to Mr. Wilham's direction, Citizens deposited all proceeds of these drafts into that account, which was a joint account with his wife. Money from other sources was deposited into that account by both Mr. and Mrs. Wilham and both drew from it.

In May of 1966, Mr. Wilham became indebted to Citizens, for an installment loan in the amount of $2,464.56. Regular monthly payments

were made. In December of 1966, one such payment of $130.58 was made from the account into which the Federal drafts had been deposited.

Citizens had no relationship with Federal and never requested instructions from Federal as to the disposition of any proceeds.

On September 25, 1968, Federal demanded payment from Citizens, which refused to pay.

Appellee Bank contends that plaintiffs have no standing to bring suit.

The complaint alleges that suit is being brought by Charles Johnson, bankruptcy receiver of Federal, by American Insurance Co. and Grain Dealers Mutual Insurance Company, the receiver's attorneys-in-fact. Attached to the complaint is a copy of a "Loan Receipt and Assignment." That agreement stated that the insurance companies were loaning money to Federal in return for an assignment of any money recovered in connection with Wilham's employment with Federal. This agreement was confirmed by the bankruptcy court.

■■ Appellee argues that these two insurance companies are mere volunteers and that volunteers cannot invoke the aid of subrogation. They cite *Wachsmuth v. Penn Central Life Insurance Co.*, 147 Ill.App. 510. In *Wachsmuth*, there was no express or implied agreement that the insurance company would be subrogated to the rights of the person to whom they loaned money. The agreement between Federal and the insurance companies in the case at bar is explicit in that the insurance companies are assigned any money received by Federal. Therefore, the insurance companies are not mere volunteers.

The main issue on appeal is whether "An Act concerning * * * fiduciary obligations" (hereinafter the Uniform Fiduciaries Act) (Ill. Rev. Stat. 1967, ch. 98, §§ 234-45) provides the Bank with a defense.

Prior to the enactment in Illinois, in 1931, of the Uniform Fiduciaries Act the Bank would have been liable to Federal for the proceeds of these drafts. (*People ex rel. Nelson v. Peoples Bank & Trust Co.*, 271 Ill.App. 41.) The facts in that case are very similar to the case at bar.

The court stated:

> "Where a bank upon accepting a check drawn to its order by one who is not indebted to it and with whom it has no account, credits the proceeds thereof to the account of the person presenting it without taking any precaution to determine the authority of the person receiving the same, it will be liable to the maker for failure to hold the proceeds of the instrument subject to the order of the maker * * *." *People ex rel Nelson v. Peoples Bank & Trust Co.*, 271 Ill.App. 41, 46.

■■ The purpose of the Act is to cover situations which arise when one

person honestly deals with another knowing him to be a fiduciary. The Act "'relaxes some of the harsher rules which require of a bank * * * the highest degree of vigilance in the detection of a fiduciary's wrong-doing.'" *National Casualty Co. v. Caswell & Co.*, 317 Ill.App. 66, 72, 45 N.E.2d 698, 701.

The Act relieves the depository bank of the duty of seeing that funds are properly applied. It becomes the principal's burden to employ honest fiduciaries. *Sugarhouse Finance Co. v. Zions First National Bank* (1968), 21 Utah 2d 68, 440 P.2d 869.

██ The parties stipulated that Mr. Wilham was a duly authorized agent of Federal. As such, he was clearly a "fiduciary" as it is defined in the Act. (Ill. Rev. Stat. 1967, ch. 98, § 234.) The drafts indicated, on their face, that Mr. Wilham was authorized to sign them. Since the drafts were "payable through", the Bank knew that Federal would be requested to specifically agree to payment of each draft before the drawee bank would remit the proceeds.

The trial court found that section 9 of the Act (Ill. Rev. Stat. 1967, ch. 98, § 242) provided the Bank with a complete defense.

> "§ 9. If a fiduciary makes a deposit in a bank to his personal credit of * * * checks drawn by him upon an account in the name of his principal if he is empowered to draw checks thereon, * * * the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary * * *."

Appellants argue that this section applies only to checks and not to "payable through" drafts. The Uniform Fiducaries Act does not define either check or draft. No Illinois cases have discussed the question of whether "checks" and "drafts" are to be considered interchangeably for purposes of the Act. In *Roswell State Bank v. Lawrence Walker Cotton Co.* (1952), 56 N.M. 107, 240 P.2d 1143, the court decided section 9 of the Uniform Fiduciaries Act was applicable in a case involving a bill of exchange. Considering the purposes of this Act, we find it would be incongruous to apply this section to checks, which are payable on demand, but not to drafts such as those in the present case, which are payable only on the specific approval of the principal.

██ Section 9 of the Act, by its terms, applies to the situation at bar and exculpates the Bank from liability to the principal. Appellants argue, however, that when an instrument is drawn to the order of a bank, as is true here, the applicable section is section 5. (Ill. Rev. Stat. 1967, ch. 98, § 238.) This section was relied on in the complaint as the basis for the cause of action. It states:

> "If a check or other bill of exchange is drawn * * * in the

name of his principal by a fiduciary empowered to draw such instrument in the name of his principal, the payee is not bound to inquire whether the fiduciary is committing a breach of his obligation as fiduciary in drawing or delivering the instrument, and is not chargeable with notice that the fiduciary is committing a breach of his obligation as fiduciary unless he takes the instrument with actual knowledge of such breach or with knowledge of such facts that his action in taking the instrument amounts to bad faith. If, however, such instrument is payable to a personal creditor of the fiduciary and delivered to the creditor in payment of or as security for a personal debt of the fiduciary to the actual knowledge of the creditor, or is drawn and delivered in any transaction known by the payee to be for the personal benefit of the fiduciary, the creditor or other payee is liable to the principal if the fiduciary in fact commits a breach of his obligaton as fiduciary in drawing or delivering the instrument."

According to the stipulated facts, Mr. Wilham first started writing drafts in November of 1964. At that point the Bank was not a creditor of Mr. Wilham's. It did not become a creditor until May of 1966. No money from this account was received by the Bank in partial payment for this debt until December of 1966.

■■ At that point 20 of the 23 drafts had already been processed. The earliest time this section could have been applicable, therefore, was December of 1966. However, even at that point, the Bank did not receive payment in the form of the draft drawn directly on the principal's account, but as a check drawn on the account in which both Mr. and Mrs. Wilham had deposited other funds. The Commissioners' Notes to the Uniform Fiduciaries Act indicates that it was one of the purposes of the Act to abolish the principle established by some cases, that the bank must ascertain, when it receives a check from a mixed account, how much of the check is personal funds and how much fiduciary funds. Commissioners' Note, sections 7, 8, and 9, Uniform Fiduciaries Act, 7 Uniform Laws Annotated 414 (Master ed. 1970).

■■ Section 5 and section 9 are not at odds. Both cover this situation from different angles but are meant to be interpreted together. This is also indicated by the Commissioners' Note.

"By the weight of authority a depository of fiduciary funds is not bound to inquire into the authority of the fiduciary to make the deposit even where the deposit is made in the personal account of the fiduciary.

And when the fiduciary makes withdrawals by checks the depository is not bound to inquire for what purpose the withdrawals

are made, whether the checks are made payable to the fiduciary personally, or as fiduciary, or to third persons.

> *But when the check is payable to the depository bank and delivered in payment of or as security for a personal debt of the fiduciary, the bank is put upon inquiry."* (Emphasis added.) 7 Uniform Laws Annotated, 414.

Therefore, unless the facts as stipulated prove on the part of the bank actual knowledge or knowledge of such facts that the Bank's actions amount to bad faith, these two sections provide a defense.

■■ Although the complaint alleged actual knowledge, clearly actual knowledge has not been shown.

Bad faith is not defined by the Act. Good faith is. "A thing is done 'in good faith' within the meaning of this Act, when it is in fact done honestly, whether it be done negligently or not." Ill. Rev. Stat. 1967, ch. 98, § 234(2).

Appellants allege that the fact the account was joint with Mrs. Wilham, who was not a fiduciary, is such a fact that bad faith may be implied.

In *Transport Trucking Co. v. First National Bank* (1956), 61 N.M. 320, 300 P.2d 476, checks made out to the principal were indorsed by an agent and deposited in a joint checking account of the agent's and his wife. The agent drew upon that account to pay some personal debts with the Bank. The court held that the trial court was correct in dismissing the action because of the applicability of the Uniform Fiduciaries Act. It held that the fact that the account was a joint one was immaterial. See also *United States Fideliy & Guaranty Co. v. Texas Bank and Trust Co.,* (Tex.Civ.App. 1964), 380 S.W.2d 900.

■■ We hold that even with knowledge such as the Bank had, its actions do not constitute actions in bad faith. Mere suspicious circumstances are not enough to require the bank to inquire. (*Transport Trucking Co. v. First National Bank.*) As the court in *Sugarhouse Finance Co. v. Zions First National Bank* (1968), 21 Utah 2d 68, 440 P.2d 869, noted, there are many legitimate reasons why an agent and principal might engage in odd checking practices. The purpose of the Uniform Fiduciary Act is to facilitate banking and financial transactions and place on the principal the burden of employing honest fiduciaries. The provisions of the Act are drectly applicable here and exculpate the Bank from liability.

For these reasons, the judgment of the circuit court of Macon County is affirmed.

Judgment affirmed.

CRAVEN and GREEN, JJ., concur.