In the Matter of BISHOP, BALDWIN, REWALD, DILLINGHAM & WONG, INC., a Hawaii Corp., Debtor.

Reynaldo D. GRAULTY, Plaintiff,

v.

BANK OF HAWAII, Defendant, and Third-Party Plaintiff,

v.

Edwin Nova THOMAS, individually, Edwin Nova Thomas, Trustee of the Edwin Nova Thomas Living Revocable Trust, and Ronald Ray Rewald, Defendants.

Bankruptcy No. 83–0381.
Adv. No. 85–0144.

United States Bankruptcy Court,
D. Hawaii.

May 8, 1986.

Thomas E. Cook and Steven Y. Otaguro, Lyons, Hagerman & Brandt, Honolulu, Hawaii, for Bank of Hawaii.

Wayson W.S. Wong and Gene K. Lau, Rice, Lee & Wong, Honolulu, Hawaii, for Edwin Nova Thomas.

## ORDER GRANTING SUMMARY JUDGMENT FOR BANK OF HAWAII

PENCE, District Judge.

Defendant Bank of Hawaii's Motion for Summary Judgment and plaintiff Graulty's Cross-Motion for Summary Judgment came on for hearing before this court on February 6, 1986. Richard Kanter appeared on behalf of plaintiff, and Thomas Cook and Steven Otaguro appeared on behalf of defendant Bank of Hawaii, and Wayson Wong appeared on behalf of Third-Party defendants Edwin Nova Thomas, and the Edwin Nova Thomas Living Revocable Trust. The court, having reviewed the motion and the memoranda in support thereof and in opposition thereto, having heard the oral arguments of counsel, and being fully advised as to the premises herein, finds as follows:

On July 25, 1980, Ronald R. Rewald (hereinafter referred to as "Rewald") purchased a house at 5975 Kalanianiole Highway from Edwin Nova Thomas (hereinafter referred to as Thomas). The purchase price was $950,000, consisting of $50,000 in cash (including a $10,000 deposit), and $900,000 to be paid with monthly installments on an Agreement of Sale.

Rewald and Thomas opened an escrow account with the Bank of Hawaii. The Bank supplied the agreement of sale between Rewald and Thomas.

Payments were made to an escrow account from the funds of Bishop, Baldwin, Rewald, Dillingham and Wong (hereinafter referred to as "BBRDW"). An initial deposit of $10,000 and 34 checks of similar amounts were made payable to the Bank of Hawaii. All checks were drafted on BBRDW's checking account. Eleven were drawn by Sue Wilson, secretary to Rewald. The rest were drawn by Rewald. The parties agree that the check payments all went into the escrow account. The terms of the escrow agreement required the Bank of Hawaii to place the escrowed funds into Thomas' checking account pursuant to the terms and conditions of the agreement. The Bank of Hawaii had no other control over the payment into or disbursal of funds out of the escrow account.

The uncontradicted affidavit of Hazel Hoke, an employee of the Bank of Hawaii's escrow department, states that no employee had any knowledge of any fraudulent activity by Rewald and that the Bank of Hawaii received no benefit from the transaction, aside from a nominal service fee of $25.00 per month.

The complaint alleges a violation by the Bank of Hawaii of Hawaii Rev.Stat. § 556–4 which is patterned after § 5 of the Uniform Fiduciaries Act (hereinafter re-

ferred to as the "UFA"). Under § 5 of the UFA, if a check is drawn in "any transaction known by the payee to be for the personal benefit of the fiduciary, the creditor or other payee is liable to the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in drawing or delivering the instrument."

In connection therewith, however, the court must also consider Hawaii Rev.Stat. § 556–8 which was patterned after § 9 of the UFA.

Hawaii Rev.Stat. § 556–8 states in relevant part:

> If a fiduciary makes a deposit in a bank to his personal credit ... of checks drawn by him upon an account in the name of his principal if he is empowered to draw checks thereon ..., the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary; and the bank is authorized to pay the amount of the deposit or any part thereof upon the personal check of the fiduciary without being liable to the principal....

The statute makes an exception for depository banks which take the check with actual knowledge of the breach or with knowledge of such facts that its actions amount to bad faith.

As pointed out in *Johnson v. Citizens National Bank of Decatur,* 30 Ill.App.3d 1066, 334 N.E.2d 295, 298 (1975):

> Section 5 and section 9 are not at odds. Both cover this situation from different angles but are meant to be interpreted together. This is also indicated by the Commissioners' Note.
> "By the weight of authority a depository of fiduciary funds is not bound to inquire into the authority of the fiduciary to make the deposit even where the deposit is made in the personal account of the fiduciary.
> And when the fiduciary makes withdrawals by checks the depository is not bound to inquire for what purpose the withdrawals are made, whether the checks are made payable to the fiduciary personally, or as fiduciary, or to third persons."

\* \* \* \* \* \*

Therefore, unless the facts as stipulated prove on the part of the Bank actual knowledge or knowledge of such facts

that the Bank's actions amount to bad faith, these two sections provide a defense.

Therefore, absent bad faith or actual knowledge by the payee that the principal's funds are being used for the personal benefit of the fiduciary, the creditor or other payee is under no obligation to inquire even as to suspicious circumstances or the unusual check writing habits of the fiduciary. Hawaii Rev.Stat. 556–4; *Sugarhouse Finance Co. v. Zions First National Bank,* 21 Utah 2d 68, 440 P.2d 869 (1968); *Johnson v. Citizens National Bank of Decatur,* 334 N.E.2d at 300. Mere negligence is insufficient to establish liability. *Trenton Trust Co. v. Western Surety Co.,* 599 S.W.2d 481, 490 (Mo.1980) (en banc).

■ Even if § 5 were given the interpretation claimed by the Trustee, nevertheless, to recover, the Trustee must show that the Bank of Hawaii knew that the transaction was for Rewald's personal benefit, and that the Bank actually knew that the funds used were from BBRDW. Such knowledge must be actual, not constructive. The Trustee must show that a specific employee of the Bank had a present awareness that BBRDW funds were being used for Rewald's personal benefit.

■ There is no duty by a bank to inquire where it receives no financial benefit from the transaction (unless the failure to inquire is a deliberate refusal to confirm the bank's suspicions). Indeed, the plaintiff has been unable to cite any case placing liability upon a bank which has received no benefit from the transaction. *See Southern Agency Co. v. Hampton Bank of St. Louis,* 452 S.W.2d 100, 105 (Mo.1970) (court influenced by fact that there are no cases which hold that a bank is liable for a failure to inquire unless the bank is benefitting financially from the transaction).

■ The Trustee argues that the face of the checks informed the Bank that BBRDW funds were being used; that the Bank was aware that the house transaction was for Rewald's personal benefit because the Bank drew up the papers relating to the escrow account. Additionally, several of the checks contained notations that the money was used for Rewald's mortgage payments. While within the Bank of Hawaii's personnel were those employees who may have had segments of information relative to Rewald's breach of fiduciary duty,

the Trustee fails, however, to show that any single employee of the Bank had knowledge of all of those facts. The Bank official who drew up the escrow papers was not the same employee who subsequently posted the checks. There was no commercial reason why any single employee should have knowledge of all facts. Therefore, the Bank—qua Bank—lacked actual knowledge or a present awareness that BBRDW funds were unlawfully being used for Rewald's personal benefit.

The cases cited by the Trustee are clearly distinguishable. *Wysowatcky v. Denver-Willys, Inc.,* 131 Colo. 266, 281 P.2d 165, 167 (1955) and *Federal Mortgage Co. v. Simes,* 210 Wis. 139, 245 N.W. 169 (1932) did not involve banks. In *Maryland Casualty Co. v. Bank of Charlotte,* 340 F.2d 550 (4th Cir.1965) and *LaVecchia v. North Carolina Joint Stock Land Bank of Durham,* 218 N.C. 35, 9 S.E.2d 489 (1940), the defendant bank was the financial beneficiary of the transaction. Here, the Bank was merely a conduit for the escrow funds. In *Guaranty Bank & Trust Co. of Alexandria v. C & R Development Co.,* 260 La. 1176, 258 So.2d 543 (1972), the defendant bank was both the payee and the drawee bank, and had clear probable evidence of misappropriation. Here, the Bank was merely the depository of the escrow funds, and had no duty to inquire as to possible misappropriations. Therefore, the Bank lacks the requisite scienter necessary under Hawaii Rev.Stat. 556–4.

The Bank's duty under its escrow account was merely to act as a depository of funds, a conduit through which money is held or transferred. The Bank received no significant financial benefit from the transaction. Thus, it is not to be held to the obligations imposed by § 5. *See Wysowatcky,* 281 P.2d at 167 (risk of dishonest fiduciary should not fall upon a bank which was a mere conduit to transmit funds); *Southern Agency Co.,* 452 S.W.2d at 105.

The Bank contends by affidavit, and the Trustee does not dispute that the Bank had no actual knowledge of Rewald's breach of his fiduciary duty. Therefore, the Bank is not liable.

Accordingly, IT IS HEREBY ORDERED that the Trustee's Motion for Summary Judgment be DENIED, and the Bank of Hawaii's Cross-motion for Summary Judgment be GRANTED.