In the Matter of BISHOP, BALDWIN, REWALD, DILLINGHAM & WONG, INC., a Hawaii corporation, Debtor

REYNALDO D. GRAULTY. Trustee of Bishop, Baldwin, Rewald, Dillingham & Wong, Inc., Plaintiff-Appellant, *v.* BANK OF HAWAII, Defendant-Appellee

NO. 12229

(9th Cir. No. 86-2214)
(D.C. No. Adv. 85-0144MP)

FEBRUARY 17, 1988

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

The United States Court of Appeals for the Ninth Circuit has certified to this court that there is a question concerning Hawaii law which is determinative of a pending appeal from the United States District Court for the District of Hawaii and there is no clear controlling precedent in the decisions of the appellate courts of the State.[1] The question is whether the Bank of Hawaii is liable under Hawaii Revised Statutes (HRS) §§ 556-4 and 556-8 for checks drawn by Ronald Ray Rewald in violation of his fiduciary duties to Bishop, Baldwin, Rewald, Dillingham & Wong, Inc., made payable to the Bank as escrow agent, deposited in the real estate collection account, and transferred to Edwin Nova Thomas' account, if the Bank transferred the funds in good faith and did not know that Rewald took the funds in violation of his fiduciary duties, but did know that the funds were for his personal use? After reviewing the facts recounted in the certification and in *Hayes v. Rewald (In re*

---

[1] Rule 13(a) of the Hawaii Rules of Appellate Procedure provide for the certification of questions of Hawaii law to the Hawaii Supreme Court by federal courts. Rule 13(a) provides:

CERTIFICATION OF QUESTION OF HAWAII LAW BY FEDERAL APPELLATE COURTS.

(a) When Certified. When a federal district or appellate court certifies to the Hawaii Supreme Court that there is involved in any proceeding before it a question concerning the law of Hawaii which is determinative of the cause, and that there is no clear controlling precedent in the Hawaii judicial decisions, the Hawaii Supreme Court may answer the certified question by written opinion.

*Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.),* 779 F.2d 471 (9th Cir. 1985), and the relevant provisions of Hawaii law, we conclude the Bank is not liable.

I.

Bishop, Baldwin, Rewald, Dillingham & Wong, Inc. (Bishop) held itself out as "one of Hawaii's oldest and largest privately-held international investment and consulting firms" dealing only in "secured, safe, non-risk" investments.[2] Bishop's advertising represented that funds deposited with the firm were "fully accessible without charge, cost, penalties, time deposits or restrictions" and that investors were guaranteed a minimum twenty percent annual return on investments. It gathered more than twenty million dollars in five years, but invested only a fraction of what was taken in. Actually, Bishop was operating a pyramid scheme where earlier investors were paid with money obtained from later investors, as its unfortunate clients discovered after five creditors filed a petition for involuntary bankruptcy on the ground that Bishop had not been paying its debts as they became due.

While the scheme was in operation, Rewald purchased a home in Honolulu from Edwin Nova Thomas for $950,000. The agreement of sale called for the payment of $50,000 of the purchase price in cash and the remainder in monthly installments. Rewald met his obligations under the agreement with money withdrawn from Bishop's bank account. He and his secretary drew a total of thirty-five checks, for more than $350,000, and transmitted them to the Bank of Hawaii, where the sums were deposited in a real estate collection account the Bank had established. The sums received by the Bank as the holder of the collection account were credited thereafter to the seller's checking account pursuant to the agreement of the parties.

The trustee in bankruptcy brought suit to recover the money paid out of the collection account to the seller, alleging a violation

---

[2] The firm was incorporated in 1979, and 50% of its stock was held by Rewald, who was the chairman of its board of directors and its treasurer. The remaining 50% was held by Sunlin Wong, its president.

by the Bank of HRS § 556-4.[3] The statute, which is patterned after section 5 of the Uniform Fiduciaries Act (UFA), provides in part that when a check is drawn by a fiduciary "in any transaction known by the payee to be for the personal benefit of the fiduciary, the creditor or other payee is liable to the principal if the fiduciary in fact commits a breach of the fiduciary's obligation as fiduciary in delivering or drawing the instrument."

The Trustee and the Bank both moved for summary judgment; the district court denied the Trustee's motion but granted the Bank's motion. Reading HRS § 556-4 in conjunction with HRS § 556-8,[4] the Hawaii counterpart of section 9 of the UFA, the district court, sitting as the Bankruptcy Court for the District of Ha-

---

[3] HRS § 556-4 (1985) reads:

Check drawn by fiduciary payable to third person. If a check or other bill of exchange is drawn by a fiduciary as such, or in the name of the fiduciary's principal by a fiduciary empowered to draw such instrument in the name of the fiduciary's principal, the payee is not bound to inquire whether the fiduciary is committing a breach of the fiduciary's obligation as fiduciary in drawing or delivering the instrument, and is not chargeable with notice that the fiduciary is committing a breach of the fiduciary's obligation as fiduciary unless the payee takes the instrument with actual knowledge of the breach or with knowledge of such facts that the payee's action in taking the instrument amounts to bad faith. If, however, the instrument is payable to a personal creditor of the fiduciary and delivered to the creditor in payment of or as security for a personal debt of the fiduciary to the actual knowledge of the creditor, or is drawn and delivered in any transaction known by the payee to be for the personal benefit of the fiduciary, the creditor or other payee is liable to the principal if the fiduciary in fact commits a breach of the fiduciary's obligation as fiduciary in drawing or delivering the instrument.

[4] HRS § 556-8 (1985) reads:

Deposit in fiduciary's personal account. If a fiduciary makes a deposit in a bank to his personal credit of checks drawn by him upon an account in his own name as fiduciary, or of checks payable to him as fiduciary, or of checks drawn by him upon an account in the name of his principal if he is empowered to draw checks thereon, or of checks payable to his principal and indorsed by him, if he is empowered to endorse such checks, or if he otherwise makes a deposit of funds held by him as fiduciary, the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary; and the bank is authorized to pay the amount of the deposit or any part thereof upon the personal check of the fiduciary without being liable to the principal, unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check, or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith.

waii, concluded the Bank "was merely the depository of the escrow funds," was under "no duty to inquire as to possible misappropriations," "received no significant financial benefit from the transaction," and, therefore, was "not to be held to the obligations imposed by [HRS § 556-4]" upon creditors and other payees. *Graulty v. Bank of Hawaii (In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.)*, 60 Bankr. 670, 673 (D. Haw. 1986). And since the Trustee did not controvert the statement in the affidavit submitted by the Bank that it had no actual knowledge of Rewald's breach of fiduciary duty, the court said the Bank also would not be liable under what it deemed the more lenient provisions of HRS § 556-8 governing bank deposits in the name of trustees. *Id.*

The Trustee appealed from the order granting summary judgment to the Bank. Noting the lack of precedent interpreting HRS §§ 556-4 and 556-8, the federal appellate court certified a legal question for our response. We begin our analysis by reviewing the history of the pertinent statutory provisions.

## II.

The provisions in question were enacted in 1945 as part of the Hawaii Uniform Fiduciaries Act,[5] which "codif[ied] the law relating to obligations of banks, transfer agents and other persons dealing with trustees, guardians and other fiduciaries, with particular reference to the degree of responsibility in case of violations by fiduciaries of their trusts." Stand. Comm. Rep. No. 249, in 1945 Senate Journal, at 687-88; Stand. Comm. Rep. No. 683, in 1945 House Journal, at 1676. As its title implies, the Hawaii law "incorporate[d] the 'Uniform Fiduciaries [Act],' which has been adopted by many of the states." *Id.*[6]

---

[5] In substance the law stands as enacted in 1945 as SLH 1945, c 197. The only amendments to the sections involved occurred in 1984, when gender-neutral terminology was substituted for gender-biased pronouns. *See* Session Laws of Hawaii (SLH) 1984, c 90, § 1.

[6] The relevant legislative committee reports on the measure only reiterate the title of Senate Bill No. 313, which became SLH 1945, c 197, give its general purpose to codify the law relating to fiduciaries, and state that it "incorporates the 'Uniform Fiduciaries [Act]' . . . ."

Prior to the advent of the Uniform Fiduciaries Act (UFA), "the common law imposed on banks dealing with fiduciaries the duty of properly applying fiduciary funds to the account of the principal." *Research-Planning, Inc. v. Bank of Utah,* 690 P.2d 1130, 1132 (Utah 1984) (citation omitted). "The [A]ct has for [a] purpose the facilitation of commercial transactions in negotiable instruments." *Colby v. Riggs National Bank,* 92 F.2d 183, 198 (D.C. Cir. 1937). To that end, it "relax[es] the harshness of the rule requiring [of banks] the highest degree of vigilance in detecting a fiduciary's wrongdoing." *Research-Planning, Inc. v. Bank of Utah,* 690 P.2d at 1133 (citing *Johnson v. Citizens National Bank,* 30 Ill. App. 3d 1066, 1070, 334 N.E.2d 295, 298 (1975) ).

Sections 4, 5, and 6 of the uniform act "deal with holders of negotiable paper drawn or indorsed by fiduciaries." 7A Uniform Laws Annotated 410 (1985).[7] Section 5, from which HRS § 556-4 is derived, covers "[c]ases where an instrument is drawn or made by the fiduciary on behalf of the principal or is drawn by the fiduciary as such, and payable to a personal creditor of the fiduciary and delivered to the creditor in payment of or as security for a personal debt of the fiduciary[.]" *Id.* at 411. Thereunder, a drawee bank would be liable to the principal if it paid the check with actual knowledge that the fiduciary committed a breach of his fiduciary duty in drawing the check, or with knowledge of such facts that its action in paying the check amounted to bad faith. *Downey v. Duquesne City Bank,* 146 Pa. Super. 289, 292, 22 A.2d 124, 127 (1941). And where a check payable to a personal creditor of the fiduciary "is drawn and delivered in any transaction known by the payee to be for the personal benefit of the fiduciary, the creditor or other payee [would be] liable to the principal if the fiduciary in fact commit[ted] a breach of [his] obligation as fiduciary in drawing or delivering the instrument." UFA § 5, HRS § 556-4.

---

[7] The purpose of these sections was "to bring cases involving fiduciaries into harmony with the principle intended to be laid down" in section 56 of the Uniform Negotiable Instruments Law, which provided:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

7A Uniform Laws Annotated, at 410.

Sections 7, 8, and 9 of the uniform act, from which HRS §§ 556-6, 556-7, and 556-8 are derived, "deal with depositories of fiduciary funds." 7A Uniform Laws Annotated, at 417. The purpose of these sections is "to facilitate banking transactions by relieving a depository, acting honestly, of the duty of inquiry as to the right of its depositors, even though fiduciaries, to check out their accounts." *Transport Trucking Co. v. First National Bank*, 61 N.M. 320, 325, 300 P.2d 476, 479 (1956). The drafters meant thereby "to lay down a definite rule, making the bank, where it acts solely as a depository, liable only if it has actual knowledge of the fiduciary's breach of duty or if it acts in bad faith[.]" 7A Uniform Laws Annotated, at 418. Where the bank is a creditor, however, the drafters intended it would be "liable to the same extent as other creditors are made liable." *Id.*

### III.

The Bank of Hawaii, however, was not the drawee bank of the checks written by Rewald or his personal creditor; nor was it the actual payee of the funds the Trustee is seeking to recover. It received the checks as an escrow agent and "transferred the funds in good faith and did not know that Rewald took the funds in breach of his fiduciary duties."

The uniform act was not designed so the loss resulting from the acts of a faithless fiduciary shall fall on "one who was a mere conduit to transmit the fund[s]." *Wysowatcky v. Denver-Willys, Inc.*, 131 Colo. 266, 270, 281 P.2d 165, 167 (1955) (quoting *Union Bank & Trust Co. v. Girard Trust Co.*, 307 Pa. 488, 504, 161 A. 865, 870 (1932)). Where evidence is lacking that a bank received checks drawn by a fiduciary as his personal creditor, or that it transferred the funds received with actual knowledge of the fiduciary's breach of his obligation as fiduciary, or that the transfers were made in bad faith, HRS §§ 556-4 and 556-8 do not render the bank liable to the principal. *Cf. Southern Agency Co. v. Hampton Bank of St. Louis*, 452 S.W.2d 100, 106 (Mo. 1970) (Bank was not liable to principal for misappropriation by fiduciary where there was no evidence that it acted dishonestly, or with actual knowledge of a breach of fiduciary duty, or that its receipt of deposits and issuance of cashier's checks were in bad faith).

Thus, our response to the certified question is that the Bank of Hawaii is not liable to Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.

*James A. Wagner (Ted N. Pettit,* with him on the briefs; *Wagner, Watson & DiBianco,* of counsel) for appellant.

*Thomas E. Cook (Steven Y. Otaguro* with him on the brief; *Lyons, Brandt, Cook & Hiramatsu,* of counsel) for appellee.