856 F.2d 78
 In the Matter of BISHOP, BALDWIN, REWALD, DILLINGHAM & WONG,
INC., a Hawaii corporation, Debtor.
Reynaldo D. GRAULTY, Trustee of Bishop, Baldwin, Rewald,
Dillingham & Wong, Inc., and not individually,
Plaintiff-Appellant,
v.
BANK OF HAWAII, Defendant-Appellee.
 No. 86-2214.
 United States Court of Appeals,
Ninth Circuit.
 Argued April 17, 1987.
Submitted March 7, 1988.
Decided Aug. 23, 1988.
 
 James A. Wagner and Richard S. Kanter, Honolulu, Hawaii, for plaintiff-appellant.
 Thomas E. Cook and Steven Y. Otaguro, Lyons, Brandt, Cook & Hiramatsu, Honolulu, Hawaii, for defendant-appellee.
 Appeal from the United States District Court for the District of Hawaii.
 Before WALLACE,* FERGUSON and WIGGINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 This bankruptcy appeal presents legal questions relating to Hawaii's interpretation of sections 5 and 9 of the Uniform Fiduciaries Act (UFA), Haw.Rev.Stat. Secs. 556-4, 556-8 (1985). The trustee in bankruptcy of an investment firm brought suit in federal district court against the Bank of Hawaii ("Bank") for money allegedly disbursed by the Bank in violation of the UFA. The trustee now appeals summary judgment for the Bank. After certifying a question to the Supreme Court of Hawaii asking for an interpretation of Hawaii's UFA, and receiving a reply, Graulty v. Bank of Hawaii (In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.), --- Haw. ----, 751 P.2d 77 (1988) (Nakamura, J.), we now affirm.
 
 BACKGROUND
 
 2
 Bishop, Baldwin, Rewald, Dillingham & Wong, Inc. ("Bishop"), held itself out as an investment firm in the state of Hawaii. The creditors of Bishop filed a petition for involuntary bankruptcy against the firm, at which time they discovered that Bishop was operating a pyramid scheme that paid investors with funds obtained from later investors. The history of the case is recounted more fully in Hayes v. Rewald (In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.), 779 F.2d 471, 472-74 (9th Cir.1985).
 
 
 3
 Rewald served as Treasurer and Chairman of the Board of Bishop and held fifty percent of the stock of the corporation. Rewald purchased a home for $950,000 from Edna Nova Thomas. The Bank agreed to hold an escrow-type real estate collection account in which it collected mortgage payments from Rewald and credited those funds to Thomas's checking account with the Bank. Rewald and his secretary drew 35 checks totaling over $350,000 from Bishop's corporate account at Hawaii National Bank to pay for the home. These checks were all made payable to the Bank of Hawaii as holder of the collection account.
 
 
 4
 Bishop's trustee in bankruptcy brought suit to recover the amounts paid out of the real estate collection account. The trustee argues that the Bank paid funds out of that account in violation of the UFA, Chapter 556 of the Hawaii Revised Statutes.
 
 
 5
 The district court, upon motions by the Bank and the trustee, granted summary judgment for the Bank. In a published opinion, Graulty v. Bank of Hawaii (In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.), 60 B.R. 670, 672-73 (Bkrtcy.D.Haw.1986), the district court ruled that the more lenient rules governing bank deposit accounts (UFA Sec. 9) applied rather than the stricter rules for creditors and other payees (UFA Sec. 5). Since the Bank had neither actual knowledge of Rewald's breach of fiduciary duty nor a financial interest in the transaction that would have created a duty to inquire, the district court entered judgment for the Bank. Id. at 673. The trustee timely appeals.
 
 DISCUSSION
 A. Appellate Jurisdiction
 
 6
 The trustee originally asserted that jurisdiction in the court of appeals was founded on 28 U.S.C. Sec. 1293(b), which allowed direct appeal from the district court to the court of appeals upon agreement of the parties. The Bank correctly noted, however, that section 1293(b) has been repealed by the Bankruptcy Amendments of 1984, Pub.L. No. 98-353, Sec. 113, 98 Stat. 343, 346 (1984); see also SEC v. Danning (In re Carter ), 759 F.2d 763, 766 (9th Cir.1985). The Bank asserted, moreover, that it never consented to direct appeal in any event.
 
 
 7
 The trustee, in his reply brief, conceded error and argued that our jurisdiction was properly premised on 28 U.S.C. Sec. 1291, because the opinion from which the appeal was sought was an opinion of the district court sitting in bankruptcy, not of the bankruptcy court. Although the lower court's opinion was captioned as from the Bankruptcy Court of the District of Hawaii, District Judge Pence presided over the adversary proceedings. The trustee is correct and appellate jurisdiction properly lies under Sec. 1291. See Harris v. McCauley (In re J.D. McCauley ), 814 F.2d 1350, 1351 (9th Cir.1987); Cannon v. Hawaii Corp. (In re Hawaii Corp.), 796 F.2d 1139, 1141 (9th Cir.1986); Klenske v. Goo (In re Manoa Fin. Co.), 781 F.2d 1370, 1372 (9th Cir.1986) (per curiam), cert. denied sub nom. Yamamoto v. Klenske, 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987). The Bank's contention that 28 U.S.C. Sec. 158(d) precluded jurisdiction would have force only if the district court had jurisdiction under 28 U.S.C. Sec. 158(a) (bankruptcy appeals), and not here where the district court had original jurisdiction under 28 U.S.C. Sec. 1334. See Benny v. England (In re Benny ), 791 F.2d 712, 718 (9th Cir.1986) ("[A]ppeals ... may be taken to this court pursuant to section 158(d) only if the order appealed from is within the scope of section 158(a), a bankruptcy court order appealed to a district court").
 
 B. Standard of Review
 
 8
 A district court's grant of summary judgment is reviewed de novo. Ashton v. Cory, 780 F.2d 816, 818 (9th Cir.1986). This court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id.; see also In re Manoa Fin. Co., 781 F.2d at 1374.
 
 C. The Merits
 
 9
 The trustee brought suit to recover from the Bank funds paid to the Bank as escrow agent for the house sale. The trustee relies on section 5 of the UFA, that provides:
 
 
 10
 If a check ... is drawn by a fiduciary as such, or in the name of the fiduciary's principal by a fiduciary empowered to draw such instrument in the name of the fiduciary's principal, the payee is not bound to inquire whether the fiduciary is committing a breach of the fiduciary's obligation as fiduciary in drawing or delivering the instrument, and is not chargeable with notice that the fiduciary is committing a breach of the fiduciary's obligation as fiduciary unless the payee takes the instrument with actual knowledge of the breach or with knowledge of such facts that the payee's action in taking the instrument amounts to bad faith. If, however, the instrument ... is drawn and delivered in any transaction known by the payee to be for the personal benefit of the fiduciary, the creditor or other payee is liable to the principal if the fiduciary in fact commits a breach of the fiduciary's obligation as fiduciary in drawing or delivering the instrument.
 
 
 11
 Haw.Rev.Stat. Sec. 556-4 (1985). Section 5 of the UFA creates liability if the payee takes with knowledge that the instrument is drawn in a personal transaction that breaches the fiduciary's duty. The trustee asserts that the Bank, as payee of the collection account checks, knew that the funds paid into the account were for a personal debt of Rewald's and so is liable under section 5.
 
 
 12
 The Bank, however, contends that section 9 of the UFA, Haw.Rev.Stat. Sec. 556-8 (1985), exempts it from the scope of liability under section 5. Section 9 provides:
 
 
 13
 If a fiduciary makes a deposit in a bank to his personal credit ... of checks drawn by him upon an account in the name of his principal if he is empowered to draw checks thereon, ... the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary; and the bank is authorized to pay the amount ... without being liable to the principal, unless the bank receives the deposit ... with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit ... or with knowledge of such facts that its action in receiving the deposit ... amounts to bad faith.
 
 
 14
 The district court, interpreting the two provisions, found that " 'unless the facts as stipulated prove on the part of the Bank actual knowledge or knowledge of such facts that the Bank's actions amount to bad faith, these two sections provide a defense'." Graulty, 60 B.R. at 672 (quoting Johnson v. Citizens Nat'l Bank of Decatur, 30 Ill.App.3d 1066, 334 N.E.2d 295, 299 (1975)). The district court thus found that section 9 absolved the Bank of any liability that it might have incurred under the requirements of section 5. The trustee contends that section 9 applies only to deposits in personal bank accounts, not to deposits in escrow-type real estate collection accounts (such as in this case) where the depository bank is on notice that the funds are for personal use.
 
 
 15
 Unable to resolve this question of Hawaii law, we certified the following question to the Supreme Court of Hawaii, pursuant to Haw.R.App.P. 13(c):
 
 
 16
 Is the Bank liable to Bishop under Hawaii Rev.Stat. sections 556-4 and 556-8 for the checks drawn by Rewald in violation of his fiduciary duties to Bishop, made payable to the Bank as escrow agent, deposited in the real estate collection account, and transferred to Thomas' account, if the Bank transferred the funds in good faith and did not know that Rewald took the funds in breach of his fiduciary duties, but did know that the funds were for Rewald's personal use? On February 17, 1988, the Hawaii Supreme Court answered our certified question in the negative. Graulty v. Bank of Hawaii (In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.), --- Haw. ----, 751 P.2d 77, 78 (1988).
 
 
 17
 The Hawaii Supreme Court noted, as did the district court, the Bank "was not the drawee bank of the checks written by Rewald ... nor was it the actual payee of the funds the Trustee is seeking to recover." Id. at ----, 751 P.2d at 81. The Hawaii Supreme Court then held that the UFA "was not designed so the loss resulting from the acts of a faithless fiduciary shall fall on 'one who was a mere conduit to transmit the fund[s].' " Id. (quoting Wysowatcky v. Denver-Willys, Inc., 131 Colo. 266, 270, 281 P.2d 165, 167 (1955) (quoting Union Bank & Trust Co. v. Girard Trust Co., 307 Pa. 488, 504, 161 A. 865, 870 (1932))). The Supreme Court of Hawaii continued:
 
 
 18
 Where evidence is lacking that a bank received checks drawn by a fiduciary as his personal creditor, or that it transferred the funds received with actual knowledge of the fiduciary's breach of his obligation as fiduciary, or that the transfers were made in bad faith, [Haw.Rev.Stat. Secs. 556-4, 556-8], do not render the bank liable to the principal.
 
 
 19
 Id. The Supreme Court of Hawaii accordingly concluded that the Bank was not liable to appellants. Id.
 
 
 20
 We thank the Supreme Court of Hawaii for its prompt and thoughtful response to our certified question and AFFIRM the judgment of the district court.
 
 
 21
 AFFIRMED.
 
 
 
 *
 Judge Wallace was substituted for Judge Kennedy after the submission of this matter. He has reviewed the record and has listened to the oral argument for this case