Thomas E. BOLGER and Barbara Bolger Gehl,
Plaintiffs-Respondents and Cross-Appellants,†

v.

MERRILL LYNCH READY ASSETS TRUST,
Defendent, Third-Party Plaintiff-Appellant and
Cross-Respondent,

Thomas E. BOLGER, Barbara Bolger Gehl, R. Allen
Beamer and Kathleen Gehl Beamer, Third-Party
Defendants-Respondents.

Court of Appeals

*No. 87–0341. Submitted on briefs October 6, 1987.—Decided
March 1, 1988.*

(Also reported in 423 N.W.2d 173.)

† Petition to review denied.

For the plaintiffs-respondents and cross-appellants, the cause was submitted on the briefs of *Robert E. Shumaker* and *David J. Hase,* of *Foley & Lardner,* of Milwaukee.

For the defendant, third-party plaintiff-appellant and cross-respondent, the cause was submitted on the briefs of *James G. Howard* and *Thomas R. Schrimpf,* of *Kluwin, Dunphy & Hankin,* of Milwaukee.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

WEDEMEYER, J. Merrill Lynch Ready Assets Trust (ML) appeals from a judgment rendered in favor of Thomas E. Bolger (Bolger) and Barbara Bolger Gehl (Gehl) and against ML. ML also appeals from the

dismissal of its third-party complaint against Bolger and Gehl on the merits and with prejudice.[1]

The dispositive issue on appeal is whether, under the undisputed facts, sec. 112.01(6), Stats., imposes liability on ML. Because ML did not have actual knowledge that the transactions engaged in by the fiduciary were for his personal benefit, we reverse.[2]

The parties stipulated to the essential facts. Bolger is the trustee of the Gehl Family Trust, and Gehl is the trustee of the Gehl Senior Trust. Both trustees designated Beamer, a son-in-law of Gehl, to be their agent to conduct the day-to-day trust affairs. As agent, Beamer had check writing authority over the bank accounts maintained for both trusts and was a fiduciary for both trusts within the meaning of sec. 112.01(1)(b), Stats.

Beamer and his wife, Kathleen, maintained a joint account with ML, designated as the "Beamer Merrill Lynch Account." Deposits to this account resulted in the purchase of shares in a money market fund administered by ML. At various times between April 16, 1981 and November 16, 1982, Beamer deposited into the account checks drawn by him on

---

[1]The disposition of the third-party claim against R. Allen Beamer (Beamer) and Kathleen Gehl Beamer was stayed by agreement pending the outcome of the principal action.

[2]Because we reverse the trial court's judgment, we need not decide Bolger's and Gehl's cross-appeal from that part of the judgment awarding prejudgment interest on the basis of simple interest from the date of demand. Because our decision on this issue is dispositive, we also need not decide ML's other issues: whether sec. 112.01(3), (7), (8), and (10), Stats., precluded recovery by the trustees; whether ML is entitled as a matter of law to indemnification from the trustees individually for their negligence in supervising the activities of a fiduciary; and whether sec. 112.06, Stats. protects ML from liability.

the bank accounts of both trusts. The checks were payable to either ML or The Bank of New York (bank) as agent for ML. The checks drawn on the account of the Gehl Family Trust totaled $23,819, and those drawn on the account of the Gehl Senior Trust totaled $23,593.79. None of these withdrawals were authorized by the trustees.

Each check was sent by Beamer to the bank. Accompanying each check was a written directive to the bank to deposit the funds into the Beamer Merrill Lynch Account. Clerical employees of the bank deposited the checks to ML's custodial account and credited the amount of the deposit to the Beamer Merrill Lynch Account, which was a subaccount of the custodial account. ML accounted to Beamer and his wife for deposits to, earnings of, and withdrawals from the Beamer Merrill Lynch Account. Beamer, or Beamer and his wife, subsequently withdrew the amounts deposited and used the funds for Beamer's own benefit, without the knowledge of the trustees or ML.

The trustees filed this claim against ML under sec. 112.01(6), Stats., alleging that ML was legally responsible to the trusts for accepting checks drawn by Beamer in breach of his obligations as a fiduciary. ML denied liability and alleged a number of affirmative defenses. ML also filed a third party complaint against Bolger, Gehl, Beamer, and Beamer's wife requesting indemnification and/or contribution.

After a bench trial, the trial court rendered a decision in favor of Bolger for $28,138.56 and in favor of Gehl for $27,813.71. The third-party actions against Bolger and Gehl were dismissed. Based on the stipulated facts, the trial court determined that the bank knew that the checks were drawn on a trust account because the trust name appeared on the heading of

the check. The court also determined that the bank knew that the deposits were for the personal benefit of Beamer because of the written directives sent to the bank to deposit the funds in the Beamer Merrill Lynch Account. The trial court then determined that the bank's knowledge should be imputed to ML, the principal. ML now appeals.

■

The issue we must decide is whether the liability imposed by sec. 112.01(6), Stats., applies to the undisputed facts of this case. Whether undisputed facts fulfill a statutory standard is ordinarily a determination of law, and an appellate court need not defer to the determination of the trial court. *State v. Disch,* 129 Wis. 2d 225, 234, 385 N.W.2d 140, 144 (1986).

Section 112.01(6), Stats., reads:

> Check drawn by fiduciary payable to third person. If a check or other bill of exchange is drawn by a fiduciary as such, or in the name of his principal by a fiduciary empowered to draw such instrument in the name of his principal, the payee is not bound to inquire whether the fiduciary is committing a breach of his obligation as fiduciary in drawing or delivering the instrument, and is not chargeable with notice that the fiduciary is committing a breach of his obligation as fiduciary unless he takes the instrument with actual knowledge of such breach, or with knowledge of such facts that his action in taking the instrument amounts to bad faith. If, however, such instrument is payable to a personal creditor of the fiduciary and delivered to the creditor in payment of or as security for a personal debt of the fiduciary to the actual knowledge of the creditor, *or is drawn and delivered in any transaction known by the payee to be for the personal benefit of the fiduciary,* the creditor or

other payee is liable to the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in drawing or delivering the instrument. [Emphasis added.]

In concluding that ML was liable, the trial court stated:

It was stipulated that Beamer was a fiduciary within the meaning of the statute (Stipulation, para. 7). Merrill Lynch or its agent, the bank, was the payee on each check (Stipulation, paras. 8, 9, 10). Each check was deposited for the personal benefit of a fiduciary, Beamer. The only remaining question is whether these were transactions "known by the payee" to be for the personal benefit of the fiduciary. This is also answered in the stipulation. Paragraph 10 includes a recitation that these checks were accompanied by a "written directive to the bank to deposit those funds to the Beamer Merrill Lynch account." Therefore, information was transmitted to [ML] that these transactions were for the personal benefit of the fiduciary, Beamer.

The trial court did not state what standard it used, whether it based its decision on ML's actual knowledge, constructive knowledge, or a duty to inquire.[3] It appears from the decision, however, that the trial court imposed liability on ML because its agent, the bank, received trust account checks payable to ML or to the bank for deposit, together with deposit slips

---

[3]We also note that the parties stipulated that "the deposited funds were subsequently withdrawn by Beamer, or Beamer and his wife, and used by Beamer for his own benefit *without the knowledge of the plaintiffs or the defendant Merrill Lynch.*" (Emphasis added.) It is not clear whether the court factored this information into its conclusion.

directing that the checks be deposited to Beamer's personal account. The court deemed these trust checks and deposit slips to be sufficient notice to the bank, and therefore to ML, that the transactions involved the application of trust funds by a fiduciary for his personal benefit.[4]

ML asserts that the transactions were insufficient to satisfy the statutory language as a matter of law. It contends that "actual knowledge," which was not present, is required before liability will attach. The precise question, then, is what is the degree of knowledge required under sec. 112.01(6), Stats., for liability of a non-bank payee when an instrument "is drawn and delivered in any transaction known by the payee to be for the personal benefit of the fiduciary?" To answer this question we must interpret the statute. This presents question of law which we review without giving deference to the trial court. *DILHR v. Coatings, Inc.*, 126 Wis. 2d 338, 343, 376 N.W.2d 834, 837 (1985).

When a statute is clear on its face we will not look beyond its language in applying it. *Wisconsin Elec. Power Co. v. Public Service Comm'n*, 110 Wis. 2d 530, 534, 329 N.W.2d 178, 181, (1983). Even though a statute may not be ambiguous, a "word may have a variety of meanings and its precise meaning must be

---

[4]The trial court's determination infers that facts which came to the attention of the agent bank created a duty of inquiry with a concomitant duty of the agent to forward such information to ML, thereby imposing liability on ML. Since we ultimately conclude that the standard for ML's liability is actual knowledge, we do not need to address whether the circumstances involve imputing the agent's knowledge to the principal.

found in its context and relation to the subject matter." *Lukaszewicz v. Concrete Research, Inc.,* 43 Wis. 2d 335, 342, 168 N.W.2d 581, 585 (1969). Because the parties reasonably disagree as to the precise meaning of the word "known" as it is used in sec. 112.01(6), Stats., we will determine its precise meaning by its context and relation to the subject matter.

Section 112.01(6), Stats., was derived from the Uniform Fiduciaries Act (U.F.A.). The U.F.A. was approved by the national conference of commissioners on uniform state laws in 1922. Wisconsin adopted the entire act in 1925, as sec. 112.01(1)-(16), Stats. Ch. 227, Laws of 1925. Prior to the adoption of the U.F.A., common law imposed upon persons dealing with fiduciaries the duty to assure that fiduciary funds were properly applied to the account of the principal. *See* Scott, *Participation in a Breach of Trust,* 34 Harv. L. Rev. 454 (1921). In some cases, the courts went so far as to charge depository banks with constructive notice of fiduciary misconduct. *Id.* at 476–80. As a result, third parties were reluctant to deal with fiduciaries. *Id.* at 454–55.

The purpose of the U.F.A. was to provide relief from the dire consequences of the common law rule. *Colby v. Riggs Nat'l Bank,* 92 F.2d 183, 187–88 (D.C. Cir. 1937). The prefatory note to the U.F.A. states that the general purpose of the Act is

> to establish uniform and definite rules in place of the diverse and indefinite rules now prevailing as to "constructive notice" of breaches of fiduciary obligations. In some cases there should be no liability in the absence of actual knowledge or bad faith; in others there should be action at peril. In

774

> none of the situations here treated is the standard
> of due care or negligence made the test.

Unif. Fiduciaries Act, 7A U.L.A. 391–92 (1985). Furthermore, "[t]he purpose of the Uniform Fiduciary Act is to facilitate banking and financial transactions and place on the principal the burden of employing honest fiduciaries." *Johnson v. Citizens Nat'l Bank,* 334 N.E.2d 295, 300 (Ill. App. 1975).

The various subparts of sec. 112.01, Stats., generally preclude liability by a third party dealing with a fiduciary if the third party acts in good faith and without actual knowledge that the fiduciary is committing a breach of his obligation. Moreover, the third party is not bound to inquire and is not chargeable with notice unless he takes the instrument with actual knowledge of a breach or with knowledge of such facts that his action amounts to bad faith. Liability does attach, however, under certain circumstances delineated in sec. 112.01.

The comment to secs. 4, 5, and 6 of the U.F.A. does not address a fact situation equivalent to our case. The comment describes these sections as covering two situations requiring different rules: (1) where the instrument is not given in a transaction known by the taker to be for the personal benefit of the fiduciary; and (2) where the instrument is given in a transaction known to be for the personal benefit of the fiduciary. Unif. Fiduciaries Act at 410–11. Under this second category, a distinction is made among (1) cases where the instrument is either payment of or security for a personal debt of the fiduciary; (2) cases where the instrument is payable to the personal creditor as payment or security for a personal debt; and (3) cases where it is payable to the fiduciary personally and

indorsed by him to his personal creditor. *Id.* at 411. The comment, in addressing when an instrument is known to be for the personal benefit of the fiduciary, only addresses circumstances where the instrument is in payment of or security for a personal debt of the fiduciary or payable to the fiduciary personally and indorsed by him to his personal creditor.

The comment also does not define what is required to establish that the instrument is known to be for the personal benefit of the fiduciary. From an examination of the entire statutory scheme, however, we conclude that imposing liability for anything less than actual knowledge by the payee that the transaction is for the personal benefit of the fiduciary would be illogical and inconsistent. First, it is inconsistent with the other protections afforded to non-creditor third parties in sec. 112.01(6), Stats., to impose a duty on the non-creditor payee to inquire whether, or to impose constructive knowledge that, the transaction was for the personal benefit of the fiduciary. Second, it is inconsistent to impose such a standard on a payee such as ML, who is in effect merely holding the funds, when a fiduciary's creditor's liability is based on actual knowledge that an instrument is in payment of or security for a personal debt to him. Unlike ML, a fiduciary's creditor would be in a position to benefit from the transfer of funds. Third, to interpret "known by the payee to be for the personal benefit of the fiduciary" as imposing anything other than actual knowledge would result in a standard for liability that was not intended and which would reintroduce the very same uncertainty that the U.F.A. was designed to prevent. We therefore conclude that either actual

knowledge or bad faith is a precondition for liability under sec. 112.01(6), Stats.

We must next determine whether, under the stipulated facts in this case, ML had actual knowledge that the transaction was for Beamer's personal benefit. We conclude as a matter of law that the bank had no actual knowledge and, therefore, that no actual knowledge can be imputed to ML.

The trial court, in its conclusions of law, stated that the checks drawn on the trust accounts were "drawn and delivered in a transaction known by the payee ... to be for the personal benefit of Beamer, a fiduciary for both trusts." Further, that "[b]y accepting those checks for deposit to the Beamer Merrill Lynch Account, Merrill Lynch was on notice that Beamer was breaching his fiduciary duties ... and acting beyond the scope of his authority." Since the trial court's conclusion which found ML liable under sec. 112.01(6), Stats., is clearly not based on ML's actual knowledge, it cannot be upheld.

The stipulated facts do not show that the bank or ML had actual knowledge that the checks were for Beamer's personal benefit or that he was breaching his fiduciary duties. The facts do not indicate that the bank made any examination of signatures, headings on checks, or directions on deposit slips. Nor should it be inferred. Requiring an agent bank to do so under the facts as shown here would clog the handling of commercial paper and impose upon the bank a burden for which it was not compensated.[5] *United States*

---

[5]"It is easy to sit down at leisure after the event and to seek how a cautious and inquiring banker might have discovered the depositor's misconduct. It would not require the acumen of a Sherlock Holmes to follow the clues which may have been

*Fidelity & Guaranty Co. v. Texas Bank & Trust Co.,* 380 S.W.2d 900, 903 (Tex. Civ. App. 1964). Furthermore, we question but do not decide whether the placement of such funds in a personal account is in itself evidence of a breach of a fiduciary's duty without evidence of a withdrawal and use of those funds for his own benefit. *Cf. Western Surety Co. v. Farmers & Merchants State Bank,* 63 N.W.2d 377, 379 (Minn. 1954) (the deposit of funds to one's personal bank account is not equivalent to a "declaration of intent to devote them to his personal ends").

In addition, to hold that the stipulated facts constituted actual knowledge would ignore the presumption that a trustee will perform his fiduciary duties unless the contrary appears. *See Barrows v. Kenosha County,* 8 Wis. 2d 58, 66, 98 N.W.2d 461, 465 (1959). The payee is entitled to assume that the transaction is innocent and consistent with honesty and fair dealing. To assume a breach of trust requires a presumption of an intentional, criminal act which is contrary to Wisconsin law. *Nygaard v. Wadhams Oil Co.,* 231 Wis. 236, 238–39, 284 N.W. 577, 578 (1939). Other jurisdictions have applied a similar presumption of honesty and fair dealing. *See Western Surety Co.,* 63 N.W.2d at 379 (depositor presumably acts honestly; bank not liable because it had no knowledge that depositor was committing a breach of his obligations or was about to embezzle funds); *Citizens Nat'l Bank,* 334 N.E.2d at 300 ("there are many legitimate reasons why an agent and principal might engage in

afforded. But should bankers be turned into detectives in order to prevent depositors from acting in violation of their obligations to third persons?" Scott, *Participation in a Breach of Trust* 34 Harv. L. Rev. at 480.

odd checking practices"); *Wysowatcky v. Denver-Willys, Inc.,* 281 P.2d 165, 166–67 (Colo. 1955) (reasonable to infer money spent by guardian on wards although withdrawals not authorized by court orders).

In conclusion, the trustees have not shown that ML or the bank had actual knowledge that the transaction was for Beamer's personal benefit. There is no evidence that the bank of ML actually knew that the transaction was improper. In addition, the stipulated facts state that the deposited funds were withdrawn and used by Beamer for his own personal benefit, *without the knowledge* of ML. Since there is no basis for concluding that ML, as a matter of law, had actual knowledge that the transaction was for Beamer's personal benefit, we hold that there was no liability under sec. 112.01(6), Stats.

*By the Court.*—Judgment reversed.