LIFEDATA MEDICAL SERVICES, Plaintiff-Respondent,

v.

LABOR & INDUSTRY REVIEW COMMISSION, and Department of Industry, Labor and Human Relations, Defendants-Appellants.

Court of Appeals

*No. 93–1134. Submitted on briefs February 2, 1994.—Decided March 16, 1995.*

(Also reported in 531 N.W.2d 451.)

663

664

For the defendants-appellants the cause was submitted on the briefs of *David P. Jenkins* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Robert M. Hesslink, Jr.* of *Hesslink Law Offices, S.C.* of Verona.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

SUNDBY, J.   Lifedata Medical Services, Inc. is a nationwide company that contracts with the insurance industry to provide qualified paramedical examiners to examine prospective policyholders. Lifedata's examiners are registered nurses, licensed practical nurses, emergency medical technicians, and paramedics.

Lifedata recruits examiners through newspaper advertisements. Some examiners apply to Lifedata without recruitment. Each examiner enters into a Lifedata Paramedical Examiner Agreement or a Lifedata Paramedical Agency Agreement. The only significant difference between the agreements is that an agent may select one or more individuals to perform paramedical examinations on behalf of the agent as a subcontractor.

The Department of Industry, Labor and Human Relations first questioned whether Lifedata's examiners were "employes" for whom Lifedata was subject to the contribution provisions of ch. 108, STATS., for the calendar years beginning in 1982. Each employer subject to ch. 108 is required to make contributions to the Unemployment Reserve Fund based on the number of its "employes." Sections 108.16, 108.17 and 108.18, STATS. In its decision of March 27, 1986, the Labor and

665

Industry Review Commission concluded that "[t]he employer has not demonstrated that the paramedical examiners were free from its direction and control in the performance of their services." In an order and judgment entered September 21, 1987, the circuit court affirmed LIRC's decision that during 1982, Lifedata was subject to the taxing and reporting provisions of the Wisconsin Unemployment Compensation Act. The court expressed no opinion as to whether a similar result would be obtained if an objection to an unemployment tax assessment for later years was filed. In this case, that question is presented.

In its decision of August 26, 1991, LIRC affirmed the decision of the Appeal Tribunal determining that Lifedata's paramedical examiners were "employes" within the meaning of § 108.02(12), STATS. Accordingly, Lifedata was found liable for unemployment compensation contributions, a late filing fee, and interest.

On review, the circuit court reversed LIRC's decision and concluded that Lifedata's paramedical examiners were not "employes" of Lifedata as defined in § 108.02(12), STATS.

Section 108.02(12), STATS., provides in part:

(a) "Employe" means any individual who is or has been performing services for an employing unit, in an employment, whether or not the individual is paid directly by such employing unit; except as provided in par. (b) or (e).[1]

(b) Paragraph (a) shall not apply to an individual performing services for an employing unit if

---

[1] Section 108.02(12)(e), STATS., creates an exception for contractors who employ individuals in employment for which the contractor is subject to the contribution or reimbursement provisions of ch. 108, STATS. Paragraph (e) does not apply here.

the employing unit satisfies the department as to both the following conditions:

1. That such individual has been and will continue to be free from the employing unit's control or direction over the performance of his or her services both under his or her contract and in fact; and

2. That such services have been performed in an independently established trade, business or profession in which the individual is customarily engaged.

We conclude that Lifedata's paramedical examiners performed services for it. We further conclude that Lifedata has not shown that its paramedical examiners have been and will continue to be free from Lifedata's control or direction. Accordingly, we reverse the order of the circuit court. In view of our conclusion, we do not decide whether Lifedata's paramedical examiners performed their examination services in an independently established trade, business or profession in which they were customarily engaged.[2]

Lifedata describes its business as a national network of paramedical examiners who provide paramedical examinations of applicants for life insurance. Lifedata tests each paramedical examiner to

---

[2] In addition, we do not decide whether the principle of claim preclusion barred the circuit court from reversing LIRC's decision. On appeal, LIRC argues that the circuit court's September 21, 1987 decision—the order upholding LIRC's earlier ruling that the examiners were "employes" during 1982—precluded the circuit court in the present action from holding that the examiners were not "employes." Because we have determined that the examiners are "employes" of Lifedata, we need not address this argument. *See Sweet v. Berge,* 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983) ("Because we have determined that there is at least one sufficient ground to support the order, we need not discuss the others.").

determine whether he or she is qualified. If it determines that the individual is qualified, it enters into a Lifedata Paramedical Examiner Agreement or a Lifedata Paramedical Agency Agreement with the examiner. Each agreement provides that the examiner shall be an independent contractor and "nothing herein shall be construed to create the relationship of employer and employe[ ]." Lifedata maintains a roster of its paramedical examiners which it provides to insurance companies, insurance agents and other examiners.

LIRC found that Lifedata's business was fully integrated with its examiners, as its sole business was to provide medical exams for insurance companies. LIRC did not find persuasive Lifedata's argument that it had no direction or control over the examiners. LIRC conceded that Lifedata did not directly supervise the examinations or schedule them. However, Lifedata checked examinations periodically for quality control.

At the time of employment, each examiner is required to purchase a Lifedata instruction manual. The manual contains several training exercises and makes suggestions or recommendations as to how examiners are to conduct the physical examinations. For example, the manual instructs the examiner not to exercise the applicant or measure blood pressure after exercise. The manual also sets limitations on the examiner's authority based on the applicant's age and policy limits; directs the examiner to contact Lifedata's coordinator for advice if requested to do a recheck beyond the examiner's capabilities; spells out standard techniques for administering tests; prohibits disclosure of the examination results; and requires the examiner to keep copies of any examination for six months or send the examination to Lifedata.

Lifedata asserts the right to ensure "minimum standards for quality control" but does not claim that it has "hands-on" control of the examiners. LIRC said that it "is not convinced that the mere absence of any direct supervision of skilled professionals who are performing routine tasks amounts to a lack of direction and control."

LIRC was further convinced that Lifedata exercised direction and control over its paramedical examiners because Lifedata negotiated the examination fees with the insurance companies. LIRC also concluded that it was significant that Lifedata could effectively discharge an examiner by certifying another examiner in the same territory, or notifying the client that it was withdrawing its approval of an examiner.

LIRC recognized that commonly applied standards for determining whether an employer has direction or control over the services of its "employes" require some modification when applied to professionals. LIRC stated in its memorandum opinion:

> Where professional services are involved, as here, and there is an absence of direct control by the employer, a slightly different rule has evolved . . . . Courts have held that an organization which solicits or screens the services of individuals skilled in professional endeavors, agrees to pay them an established rate, and then offers their services to clients exercises sufficient control to create an employment relationship.

(Quoting *In re Stat Services, P.C.*, 539 N.Y.S.2d 531, 532 (App. Div. 1989)) (citations omitted).

Because the facts as to the extent of Lifedata's control and direction over the performance of its paramedical examiners are undisputed, we need not

669

apply the standard of review, § 102.23(1)(a), STATS., by which we review LIRC's findings of fact. We must, however, determine whether the facts support LIRC's finding that Lifedata failed to show that its paramedical examiners will continue to be free from Lifedata's control or direction over the performance of the examiners' services.

Whether the facts fulfill a statutory standard is a question of law. *Bolger v. Merrill Lynch Ready Assets Trust*, 143 Wis. 2d 766, 771, 423 N.W.2d 173, 174 (Ct. App. 1988). In this case, the question is whether the examiners are "employes" as defined in § 108.02(12), STATS. We are not bound by LIRC's conclusions of law. *West Bend Educ. Ass'n v. WERC*, 121 Wis. 2d 1, 11, 357 N.W.2d 534, 539 (1984). However, where the agency's "experience, technical competence and specialized knowledge aid the agency in interpreting and applying a statute, its conclusions are entitled to deference." *Madison Metro. Sch. Dist. v. WERC*, 133 Wis. 2d 462, 467, 395 N.W.2d 825, 827 (Ct. App. 1986). Generally, we apply the "great weight" or "any rational basis" standard to conclusions of law which the agency has substantial experience in addressing. *Id.*, 395 N.W.2d at 827-28. Also, where a legal question is intertwined with factual determinations or with value or policy determinations, or where the agency's interpretation and application of the law is long-standing, we defer to the agency which has the primary responsibility for determining fact and policy. *See Nottelson v. DILHR*, 94 Wis. 2d 106, 115-17, 287 N.W.2d 763, 768-69 (1980).

The public policy of this state recognizes that unemployment is an urgent public problem having a heavy social cost. Section 108.01(1), STATS. The legislature has prescribed that "[e]ach employing unit in

Wisconsin should pay at least a part of this social cost, connected with its own irregular operations, by financing compensation for its own unemployed workers." *Id.* To share this social cost, each employer must make contributions to the Unemployment Reserve Fund. Sections 108.16, 108.17 and 108.18, STATS. To the extent that employers avoid contributing to defraying the heavy social cost of unemployment, other employers may be required to make contributions to the fund beyond their fair share, or public funds needed for other important public purposes will have to be diverted to the fund. Because LIRC is primarily responsible for determining fact and policy, we defer to its conclusions.

However, Lifedata argues that because LIRC has had such limited experience in determining who is an "employe" under § 108.02(12), STATS., we should review its decision *de novo*.[3] Lifedata argues that, "[a]t most, [LIRC's] decision is entitled to due weight." We disagree.

We have held that the Department of Revenue's experience in construing tax exemption statutes entitles its determinations to great weight even though it may not previously have made the determination of taxability or exemption in a particular fact situation. *Susie Q Fish Co., Inc. v. DOR*, 148 Wis. 2d 862, 868-69, 436 N.W.2d 914, 917 (Ct. App. 1989). LIRC has had extensive experience in interpreting § 108.02(12), STATS. Unemployment benefits are payable only to "employes"; therefore, each applicant for benefits must

---

[3] Specifically, Lifedata argues that LIRC has virtually no experience in determining whether an "employer-employe" relationship arises in factual circumstances analogous to the situation here.

be examined to determine whether the individual is an "employe" entitled to benefits under §§ 108.03(1) and 108.04, STATS. Further, LIRC has had previous experience in determining whether individuals who are not payroll employees are nonetheless "employes" for the purposes of the unemployment compensation law.[4]

In each of these cases, LIRC determined whether exemptions under § 108.02(12)(b), STATS., applied to professionals performing "on-call" services for the employer. A review of these determinations convinces us that LIRC has applied its general expertise in determining whether an individual is an "employe" to fact situations very similar to those presented in this case. We therefore conclude that LIRC's determination that Lifedata exercises control and direction over its paramedical examiners is entitled to great weight.

In its memorandum opinion, LIRC reasoned:

> "Courts have held that an organization which solicits or screens the services of individuals skilled in professional endeavors, agrees to pay them an established rate, and then offers their services to

---

[4] *See In re Contribution Liab. of Comp Health,* Nos. 8577S and 8714S (LIRC Nov. 23, 1990) (minimal level of direction and control over doctor on roster sufficient to satisfy definition of "employe"); *In re Contribution Liab. of Peter Holzhauer, M.D. & Upendra Apte, M.D.,* No. 8733S (LIRC Apr. 30, 1991) (physicians providing emergency medical services on a part-time basis held to be "employes" of Acute Care Associates); *In re Contribution Liab. of Mary C. Carlson,* Nos. 4745S and 4746S (LIRC May 6, 1987) (individuals providing physical examinations and reports of life insurance applicants held to be "employes" of Mary Carlson); *In re Contribution Liab. of The Dove-Health Care, Inc.,* No. 5391S (LIRC July 15, 1986) (nurses providing homebound clients with skilled nursing care held to be "employes" of Dove Health-Care).

clients exercises sufficient control to create an employment relationship. . . ." (Citations omitted.) *Matter of Stat. Services, P.C.*, 539 N.Y. Supp. 2d 531, 532 (App. Div., 1989). The Commission finds this reasoning persuasive in the context of this fact situation, consistent with prior decisions in the matter of *Comp. Health*, Hearing Nos. 8577, S and 8714, S (Nov. 23, 1990) and *Peter Holzhauer, M.D., & Upendre Apte, M.D.*, Hearing No. 8733, S (April 30, 1991).

The Appeal Tribunal concluded that Lifedata had failed to establish that its examiners were free from its control or direction over the performance of their services. LIRC agreed with the Tribunal's conclusion, as do we. We therefore reverse the contrary decision of the trial court.

*By the Court.*—Order reversed.