LaVern FISCHER and Mary Fischer, Plaintiffs-
Appellants,†

v.

DOYLESTOWN FIRE DEPARTMENT, Village of Doylestown
and General Casualty Company of Wisconsin,
Defendants-Respondents.

Court of Appeals

*No. 95–0796. Submitted on briefs October 9, 1995.—Decided
December 28, 1995.*

(Also reported in 543 N.W.2d 575.)

†Petition to review denied.

For the plaintiffs-appellants the cause was submitted on the briefs of *Steven J. Schooler* of *Lawton & Cates, S.C.* of Madison.

For the defendants-respondents the cause was submitted on the brief of *Rick J. Mundt* and *Kim I. Moermond* of *Winner, Wixson & Pernitz* of Madison.

Before Gartzke, P.J., Sundby and Vergeront, JJ.

VERGERONT, J. LaVern and Mary Fischer appeal from a summary judgment dismissing their personal injury claim against the Doylestown Fire Department, the Village of Doylestown and General Casualty Company of Wisconsin. The trial court concluded that the fire department and the village were immune from liability under Wisconsin's recreational use statute, § 895.52, STATS., because the Fischers were engaged in a recreational activity and because both the fire department and the village are governmental bodies. We affirm.

The following facts are not disputed. LaVern Fischer was injured while he was attending the 1992 Doylestown Firemen's Picnic, an event sponsored annually by the Doylestown Fire Department. A bench he was sitting on at the picnic collapsed. The picnic is held at the Firemen's Park, which is owned by the Village of Doylestown. The incident occurred on the last day of the event. The picnic is open to the public and no general admission fee is charged. The fire department sells food and drinks for a profit. There are also games and activities at the event, including soft-

ball, horseshoes, a raffle, music, amusement rides, a truck pull and bingo. Visitors are required to pay a fee or purchase a ticket in order to participate in the games and activities. There are also two tents set up to provide visitors a shaded place to rest and socialize.

The fire department made approximately $4,300 from the 1992 picnic, primarily from the sale of food and beer, but also from the tickets sold for the activities. The fire department uses the money from the picnic to maintain the park and purchase park and fire equipment. Money from prior picnics paid for buildings in the park.

The Fischers attended the event with their grandchildren in the morning on the day of the injury. They returned in the afternoon with their grandson to take him on the amusement rides, and that is when the injury occurred. The rides require the purchase of tickets. LaVern also planned to attend the truck pull, which was in an enclosed area and required a ticket. But he did not do so because the gates were closed and the event was almost over by the time he got there. The Fischers intended to purchase their supper at the picnic.

When reviewing a grant of summary judgment, we apply the same standards as the trial court. *Ervin v. City of Kenosha*, 159 Wis. 2d 464, 479, 464 N.W.2d 654, 660 (1991). We grant summary judgment if there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Section 802.08(2), STATS. We do not decide issues of fact when reviewing summary judgment motions, but simply determine if there is a dispute of material fact. *Ervin*, 159 Wis. 2d at 480, 464 N.W.2d at 661. Even if there are no disputed issues of material fact, if reasona-

ble alternative inferences can be drawn from the facts, summary judgment is not appropriate. *Id.* at 478-79, 464 N.W.2d at 660.

The Fischers contend that the trial court errone-ously granted. summary judgment to the defendants because the undisputed facts raise conflicting infer-ences as to whether the event was recreational, and therefore within the protection of § 895.52, STATS., or commercial.

Section 895.52(2)(b), STATS., provides that, with certain exceptions, "no owner . . . is liable for any injury to . . . a person engaging in a recreational activity on the owner's property." Section 895.52(1)(g) defines "recreational activity" as:

> [A]ny outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction in any such activity. "Recreational activity" includes, but is not limited to, hunting, fishing, trapping, camping, picnicking, exploring caves, nature study, bicycling, horseback riding, bird-watching, motorcycling, operating an all-ter-rain vehicle, ballooning, hang gliding, hiking, tobogganing, sledding, sleigh riding, snowmobiling, skiing, skating, water sports, sight-seeing, rock-climbing, cutting or removing wood, climbing obser-vation towers, animal training, harvesting the products of nature and any other outdoor sport, game or educational activity, but does not include any organized team sport activity sponsored by the owner of the property on which the activity takes place.

The Fischers rely on *Silingo v. Village of Mukwonago*, 156 Wis. 2d 536, 458 N.W.2d 379 (Ct. App. 1990), in arguing that conflicting reasonable inferences entitle them to a trial. In *Silingo*, we held

that summary judgment had been improperly granted because there was a disputed issue of material fact as to whether an event called "Maxwell Street Days," an outdoor flea market, was a recreational activity covered by the statute. We concluded that the intrinsic nature of the flea market, where over one hundred vendors offered their wares for sale to the public, raised an inference that the event was commercial. On the other hand, we concluded that the "community flavor" of the event, the donation of the site by the village, and the sponsorship motivation of the American Legion, even in the face of its profit opportunity, raised an inference that the event was recreational. *Silingo*, 156 Wis: 2d at 544-45, 458 N.W.2d at 383.

In *Silingo*, we adopted an objective test to determine whether an activity is "recreational":

> [This test] requires that *all social and economic aspects* of the activity be examined. Relevant considerations on this question include, without limitation, the intrinsic nature of the activity, the type of service or commodity offered to the public, and the activity's purpose and consequence.

*Silingo*, 156 Wis. 2d at 544, 458 N.W.2d at 382 (emphasis in original).

Applying this test to the undisputed facts here, we conclude there are no conflicting inferences as there were in *Silingo*. Even though refreshments and activities were sold at the Firemen's Picnic, it is not reasonable to infer that the intrinsic nature of the picnic was commercial in the way that a flea market is. As we noted in *Silingo*, one purpose of the flea market was to offer the vendors' merchandise for sale to the public and provide the opportunity for the public to transact business with the vendors. *Silingo*, 156 Wis. 2d at 544-

45, 458 N.W.2d at 383. We noted that an economic relationship between seller and potential buyer was clearly at work, as in a mall or store, but in a less formal setting. *Id.* at 545, 458 N.W.2d at 383. That is not the case at the Firemen's Picnic. People coming to the picnic are coming for the purpose of "exercise, relaxation or pleasure." *See* § 895.52(1)(g), STATS. The activities engaged in at the picnic—eating, drinking, playing and observing games—are substantially similar to several examples listed in § 895.52(1)(g), such as "sight-seeing," "picnicking" and "any other outdoor . . . game."

In *Hall v. Turtle Lake Lions Club*, 146 Wis. 2d 486, 431 N.W.2d 696 (Ct. App. 1988), we held that a community fair sponsored by the Lions Club offering an agricultural show, concessions, carnival rides and a demolition derby was a recreational event under the statute. *Id.* at 488, 431 N.W.2d at 697. We therefore affirmed the trial court's grant of summary judgment in favor of the Lions Club.

The Fischers argue that *Hall* is distinguishable because there was no evidence in *Hall* of a profit-making motive by the sponsor, as there is here. According to the Fischers, the fire department's profit motive creates a reasonable inference that the event is commercial rather than recreational in nature. We do not agree. The profits earned by the fire department are used to pay for maintenance of the park, and to purchase park equipment and fire equipment. These are not profits in the ordinary commercial sense of the word. The Firemen's Picnic is, in many ways, the community's way of paying for public services.

Under § 895.52(6)(a), STATS., private landowners lose their immunity if they collect money, goods or services in excess of $2,000 for recreational activities

during the year in which the injury occurs. The only economic limit placed upon a governmental body seeking immunity under § 895.52 is that the governmental body acting as an owner may not claim immunity when the owner charges an admission fee for spectators. Section 895.52(4)(a); *Nelson v. Schreiner*, 161 Wis. 2d 798, 805, 469 N.W.2d 214, 217-18 (Ct. App. 1991). The exclusion of private landowners who collect above $2,000 annually demonstrates that a profit earned by a governmental body does not, in itself, convert a recreational event into a commercial one.[1]

Although there are distinctions between the undisputed facts here and those in *Hall*, they do not warrant a different result. We conclude that the facts do not raise conflicting inferences. The trial court did not err in holding that, as a matter of law, the Fischers engaged in a recreational activity by attending the Firemen's Picnic.

The Fischers next argue that there is a disputed issue of material fact relating to the status of the fire department as a governmental body. They contend that the fire department is not a governmental body, but rather a private property owner[2] that is not immune from liability because it receives more than $2,000 annually for the recreational activities on its property. Section 895.52(6)(a), STATS.

---

[1] We address the Fischers' argument that the fire department is not a governmental entity later in the opinion.

[2] A "private property owner" is defined as any owner other than a governmental body or nonprofit organization. Section 895.52(1)(e), STATS. An "owner" includes any person, governmental body or nonprofit organization that owns, leases or occupies property. Section 895.52(1)(d).

Section 895.52(1)(a)3 and 4, STATS., defines a governmental body to include a "county or municipal governing body, agency, board, commission, committee, council, department, district or any other public body corporate and politic created by constitution, statute, ordinance, rule or order" and a "governmental or quasi-governmental corporation." The definition also includes a "formally constituted subunit or an agency [of either of those entities just listed]." Section 895.52(1)(a)5. It is not disputed that the village is a municipal governing body within the meaning of § 895.52(1)(a)3. The issue is the relationship between the village and the fire department.

The undisputed facts are that the village provides funding to the fire department, pays firefighters for the calls on which they are sent, and approves the election of the fire chief. The fire department submits an annual budget to the village and the village then includes approved purchases in the village budget. The fire department does not pay a fee to use the park for the picnic. However, a fee is charged by the fire department for others to use the park. These fees go into the fire department's budget. The Fischers' own submissions show that the fire department is not a volunteer fire company organized under ch. 213, STATS., or a nonprofit corporation organized under ch. 181, STATS., or a corporation organized under ch. 180, STATS.

The only reasonable inference from this record is that the fire department is a subunit or agency of the village within the meaning of § 895.52(1)(a)5, STATS.

It is true that the fire department functions independently of the village in that it sets its own meetings, conducts its own monthly fire drills, determines its training needs, and organizes the picnic. But these

facts are not sufficient to create a dispute concerning whether the fire department is a subunit or agency of the village.

The Fischers also argue that there is an issue of fact regarding the fire department's status as a governmental unit because of the defendants' response to the Fischers' request for admission. The request stated:

> That defendant, Doylestown Fire Department, is a department of the Village of Doylestown with its principal address for correspondence in Wisconsin Dells, Wisconsin 53965 at 1172 Gale Drive.

The response to this request was "Deny."

Counsel for the defendants stated at the hearing on defendants' motion for summary judgment that defendants denied the request for admission because it contained an incorrect address. The trial court accepted this explanation, although it stated that the denial to "some extent skirted the intention of the inquiry."[3]

The trial court noted that the Fischers' complaint made the same allegation as that contained in the request to admit. The only negligent acts alleged in the complaint were those attributed to the fire department. Presumably the Fischers wished to establish that the fire department was a "department" of the village in order to hold the village liable. The answer denied this allegation based on lack of information and belief. But the defendants also asserted as an affirmative defense

---

[3] Section 804.11(1)(b), STATS., provides that the denial of a request to admit must "fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder."

in their answer that the fire department is not a proper party and lacks the capacity to be sued. As the trial court noted, the defendants proceeded throughout as if the village and the fire department were the same party. Their position never was that the fire department was not a subunit or agency of the village. The Fischers do not assert that the denial misled them.

Although the defendants did not file a motion to amend their denial to the request to admit, the trial court's analysis and comments on this point show that it declined to treat the denial as a concession by the defendants that the fire department is not a subunit or agency of the village. The lack of a formal motion in these circumstances is not fatal. *See Schmid v. Olsen*, 111 Wis. 2d 228, 235 n.3, 330 N.W.2d 547, 551 (1983) (unnecessary for a party seeking to amend or withdraw admission to make a formal motion). Whether to permit a party to amend a response to a request to admit is within the trial court's discretion. *Id.* at 237, 330 N.W.2d at 551. We conclude the trial court did not erroneously exercise its discretion in relieving defendants from the effect of the denial insofar as it concerned the relationship between the fire department and the village.

*By the Court.*—Judgment affirmed.

SUNDBY, J. (*dissenting*). The question presented in this case is:

Is a village volunteer fire department immune from liability under the Recreational Activities Statute, § 895.52, STATS., for its negligent infliction of personal injury on a person who attends its annual

"picnic" whose "primary and sole purpose" is to raise money for the fire department?

I conclude that under the tests we must apply to determine whether an activity is a "recreational activity" as defined in § 895.52(1)(g), STATS., by the Wisconsin Supreme Court in *Linville v. City of Janesville*, 184 Wis. 2d 705, 716, 516 N.W.2d 427, 430-31 (1994), the trial court should have granted plaintiffs' summary judgment that the Doylestown Volunteer Fire Department's annual "picnic" was not a "recreational activity." Therefore, I respectfully dissent.

Section 895.52(2)(a), STATS., provides:

> Except as provided in subs. (3) to (6), no owner . . . owes to any person who enters the owner's property to engage in a recreational activity:
> 1. A duty to keep the property safe for recreational activities.
> 2. A duty to inspect the property, except as provided under s. 23.115(2).
> 3. A duty to give warning of an unsafe condition, use or activity on the property.

Fischer claims that the fire department was negligent in constructing a bench for seating patrons of the "picnic" which collapsed when he sat on it.

An "owner" includes "a governmental body . . . that owns, leases or occupies property." Section 895.52(1)(d)1, STATS. I agree with the majority that the volunteer fire department is an "owner" for purposes of § 895.52. Of course, the defendant, Village of Doylestown, is a governmental body.

Section 895.52(1)(g), STATS., provides:

> "Recreational activity" means any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or

instruction in any such activity. "Recreational activity" includes, but is not limited to, hunting, fishing, trapping, camping, picnicking, exploring caves, nature study, bicycling, horseback riding, bird-watching, motorcycling, operating an all-terrain vehicle, ballooning, hang gliding, hiking, tobogganing, sledding, sleigh riding, snowmobiling, skiing, skating, water sports, sight-seeing, rock-climbing, cutting or removing wood, climbing observation towers, animal training, harvesting the products of nature and any other outdoor sport, game or educational activity, but does not include any organized team sport activity sponsored by the owner of the property on which the activity takes place.

The supreme court has said that in determining whether an activity is a "recreational activity," we must apply a test consistent with the purpose of the statute. *Linville*, 184 Wis. 2d at 715-16, 516 N.W.2d at 430. The purpose of the statute is set out in Section 1 of 1983 Wis. Act 418.[1] The supreme court stated:

A test which is consistent with the purpose of the statute is one which considers the purpose and nature of the activity in addition to the user's intent. Such a test was adopted by the court of appeals in this case:

The test requires examination of all aspects of the activity. The intrinsic nature, purpose and consequence of the activity are relevant. While the injured person's subjective assessment of the activity is relevant, it is not controlling. (cites omitted). Thus, whether the injured person intended to recreate is not dispositive,

[1] *See infra*, p.98.

(cites omitted), but why he was on the
property is pertinent. (cites omitted).

184 Wis. 2d at 716, 516 N.W.2d at 430.

It is admitted by the fire department that the
"intrinsic nature, purpose and consequence" of its
annual "picnic" is to raise money for the operation of
the fire department. The fire chief, Steven Langsdorf,
testified that the "picnic" produced the department's
"total budget." The "picnic" had been an annual event
conducted by the fire department in the village park for
thirty-one years. A "large part" of the department's
meetings is devoted to planning the "picnic" and
administering the funds raised. The "picnic" at which
plaintiff LaVern Fischer was injured grossed approxi-
mately $8000 and "netted" approximately $4300.

The majority concludes that the trial court did not
err in holding that, as a matter of law, Fischer was
engaged in a recreational activity when he attended
the "picnic." Majority op. at 91. In *Silingo v. Village of
Mukwonago*, 156 Wis. 2d 536, 458 N.W.2d 379 (Ct.
App. 1990), we held that whether an activity is a "recre-
ational activity" is a question of fact. We held that the
trial court improperly granted summary judgment
because there was a disputed issue of material fact as
to whether "Maxwell Street Days," an outdoor flea
market, was a recreational activity. In the Comment
cited by the supreme court in *Linville*, 184 Wis. 2d at
715, 516 N.W.2d at 430, the author likewise concludes
that under the objective test adopted in *Silingo*, when
an allegedly recreational activity does not appear as an
enumerated activity in § 895.52(1)(g), STATS., it is a
question of fact whether that activity is "substantially
similar" to the other listed activities. Stuart J. Ford,
Comment, *Wisconsin's Recreational Use Statute:
Towards Sharpening the Picture at the Edges*, 1991

WIS. L. REV. 491, 519. I do not believe, however, that the Commentator intended to opine that the *ultimate* question is a question of fact. It is hornbook law that if the facts are undisputed, the question of whether those facts fulfill a statutory standard is a question of law. *Lifedata Medical Servs. v. LIRC*, 192 Wis. 2d 663, 670, 531 N.W.2d 451, 454 (Ct. App. 1995).

I agree with the majority that the facts necessary to determine whether the fire department's "picnic" was a "recreational activity" are undisputed and thus, we are presented with a question of law. However, I disagree with the majority's conclusion and would hold that on the undisputed facts, the fire department's "picnic" was not a "recreational activity."

The majority reached its conclusion without considering the purpose of the Recreational Activities Law. In *Linville*, the court stated that the purpose behind § 895.52, STATS., is found in the statement of legislative intent in 1983 Wis. Act 418 as follows:

> **Legislative intent.** The legislature intends by this act to limit the liability of property owners towards others who use their property for recreational activities under circumstances in which the owner does not derive more than a minimal pecuniary benefit. While it is not possible to specify in a statute every activity which might constitute a recreational activity, this act provides examples of the kinds of activities that are meant to be included, and the legislature intends that, where substantially similar circumstances or activities exist, this legislation should be liberally construed in favor of property owners to protect them from liability. The act is intended to overrule any previous Wisconsin supreme court decisions interpreting section 29.68 of the statutes if the decision is more restrictive than or inconsistent with the provisions of this act.

*Linville*, 184 Wis. 2d at 714-15, 516 N.W.2d at 430.

When the activity is not specifically enumerated in § 895.52(1)(g), STATS., whether the activity is "recreational" is inherently ambiguous. When a statute is ambiguous, we first resort to the language of the statute. *See State v. Ahrling*, 191 Wis. 2d 398, 403, 528 N.W.2d 431, 433 (1995). The declaration of intent is, of course, a part of the law even though it appears only in the session laws. In my opinion, the declaration of intent in 1983 Wis. Act 418 is the most important part of the Recreational Activities Law. First, it tells us that if the activity is not included in the enumeration, it may constitute a "recreational activity . . . *where substantially similar circumstances or activities exist*." (Emphasis added.) I conclude that the department's profitmaking "picnic" is not an activity "substantially similar" to the enumerated activities.

Second, the declaration of legislative intent states that: "The legislature intends by this act to limit the liability of property owners towards others who use their property for recreational activities *under circumstances in which the owner does not derive more than a minimal pecuniary benefit*." 1983 Wis. Act 418 (emphasis added). The revenues derived from the department's annual "picnic" are its life-blood. Finally, the legislative history supports a construction of the statute which limits the statutory immunity to the gratuitous offering by a landowner of the use of his or her property. The Comment offers as a definition of "recreational use" "any recreational activity that a visitor might want to pursue on someone else's land, where the landowner has no fundamental objection to the activity but is likely to deny permission solely to avoid potential liability for accidents arising out of the activity." 1991 WIS. L. REV. at 492. The Comment approves of

our use of "minimal pecuniary benefit" in *Douglas v. Dewey*, 154 Wis. 2d 451, 453 N.W.2d 500 (Ct. App. 1990), to conclude that the phrase "[gives] rise to a tenor of granting statutory immunity only to landowners whose permission to use the land was gratuitous." 1991 WIS. L. REV. at 513.

Mr. Ford questions why the drafters of the 1984 Act chose the language that now appears as the statement of legislative intent. *Id.* at 507. His Comment tracks the legislative history of the bill which ultimately became 1983 Wis. Act 418, noting that the bill began in the Assembly but was dropped. *Id.* at 508. The Comment tracks the 1983 legislative history in footnotes 64 through 72 at pages 507-09. A reading of that legislative history is a must if one is to understand the Recreational Activities Law. The legislative history shows that the Senate added the statement of legislative intent (there was no statement of intent in the Assembly Bill) to respond to some of the ambiguities which the sponsors of the legislation and the drafters saw in § 29.68, STATS., 1963, and the Assembly Bill. The memoranda and correspondence in the legislative record of SB 408 show that the sponsors and drafters were concerned that the Assembly Bill did not adequately define the recreational activities which the landowner could allow without liability.

The representative of the Ice Age Trail stated in a letter of October 11, 1983, to the principal Senate sponsor, Senator David Helbach, that the "definition of 'recreational use' does, and I am afraid, always will cause trouble. We will have to do the best we can and leave the rest up to the courts." In a November 30, 1983 letter to Senator Helbach, the Department of Natural Resources' counsel stated that, "[t]he definition of 'rec-

reational purpose' continues to concern me." Drafting record of 1983 Wis. Act 418, LRB-4028/2.

The drafting file also included a draft of a possible "Public Access Act," drafted by Professor W. Church (PRIVATE LANDS AND PUBLIC RECREATION: A REPORT AND PROPOSED NEW MODEL ACT ON ACCESS, LIABILITY AND TRESPASS). Drafting record of 1981 SB 817. In that Act, Professor Church suggested a very simple definition of "recreational use" to "include[] any activity undertaken for exercise, education, relaxation, or pleasure on land owned by another." 1991 WIS. L. REV. at 537. That is substantially the first line of the definition of "recreational activity" in § 895.52(1)(g), STATS., except that the word "activity" was modified by the word "outdoor."

I believe the legislative history makes clear that the legislature was unwilling to eliminate the enumeration of "recreational activit[ies]" presumably out of fear that the courts would vitiate the legislature's intent by too broad a construction of "recreational activity." The legislature's concern in this respect is traceable to the origins of Wisconsin's Recreational Activities Law. The impetus for § 29.68, STATS., 1963, came from The Forest Industries Information Committee of Wisconsin representing industrial forest owners who had suffered severe damage to forest reproduction from excessively large deer herds. Note, *Torts-Statutes-Liability of Landowner to Persons Entering for Recreational Purposes*, 1964 WIS. L. REV. 705, 709. The forest owners began a successful campaign to invite deer hunters to use their lands. *Id.* However, they became concerned that their active solicitation of hunters exposed them to liability to hunters injured on their land, particularly those who used the narrow and hazardous timber roads and trails. *Id.*

Section 29.68, STATS., 1963, did not entirely accomplish its purpose because of the broad construction given by the courts to the exception for "willful" failure to warn entrants against a dangerous condition existing on the land. Further, despite the statute, the Wisconsin Supreme Court continued to give the term "valuable consideration," which vitiated immunity, a construction so broad that the conferring of almost any benefit upon the landowner or a mutuality of interest of the landowner and the entrant destroyed immunity. *See Copeland v. Larson*, 46 Wis. 2d 337, 347, 174 N.W.2d 745, 750 (1970).

The original intent of the legislature is now so distant that it is difficult to recall that the original purpose of the recreational use immunity statute was to eliminate the "invitation" theory of landowner liability and substitute therefor the "economic-benefit" theory. *See Douglas v. Dewey*, 154 Wis. 2d at 460-62, 453 N.W.2d at 504-05. In *Douglas*, we concluded that, in § 895.52, STATS., the "legislature abandoned the invitation theory and adopted a pecuniary-benefit approach, with the caveat that the pecuniary benefit to the owner for the use of his or her property must be actual, not merely potential." *Id*. at 461, 453 N.W.2d at 504-05. We also concluded that the legislature intended to overrule those cases holding that a landowner was liable if there was any benefit to the landowner from the visitor's entry including a mere mutuality of interest between the owner and the visitor. *See id*. at 461, 453 N.W.2d at 505. This interpretation of the legislative history is binding on us.

The legislature did not retain "valuable consideration" as the yardstick to gauge immunity or liability. *Id*. at 462, 453 N.W.2d at 505. We said that plainly, the

legislature did not intend to expand the landowner's liability for recreational use of his or her land as the *Copeland* court's construction of "valuable consideration" required. *Id.* One of the decisions of the Wisconsin Supreme Court the legislature may have intended to overrule was *Quesenberry v. Milwaukee County*, 106 Wis. 2d 685, 317 N.W.2d 468 (1982). In that case, the court held that plaintiffs who were injured playing golf on Milwaukee County's golf course stated a claim against Milwaukee County because golf courses did not come within the scope of § 29.68, STATS., 1963. The court noted that the statute had been amended after its enactment by several amendments adding specific activities as "recreational purposes." *Id.* at 692, 317 N.W.2d at 471-72. Therefore, the court refused to give a broad construction to the term "recreational purposes." The court applied the rule of statutory construction, *ejusdem generis*, and concluded that a "common feature of the enumerated words is that they are the type of activity that one associates being done on land in its natural undeveloped state . . . ." *Id.* at 693, 317 N.W.2d at 472.

As is usually the case with the development and enactment of controversial legislation, 1983 Wis. Act 418 was a compromise. The legislature rejected "valuable consideration" but required a "minimal pecuniary benefit" as the *sine qua non* of immunity. It rejected the *ejusdem generis* rule in favor of a qualifying phrase that an activity would be recreational where "substantially similar" circumstances or activities to the enumerated activities exist. Plainly, the legislature believed that by these changes it was overruling *Copeland* and *Quesenberry*. However, the legislature was unwilling to go with a definition of "recreational activ-

ity" or "recreational use" as broad as that Professor Church suggested in the Public Access Act.

It has been suggested that the legislature intended that the courts give a liberal construction to "recreational activity." The statement of legislative intent provides that: "[W]here substantially similar circumstances or activities exist, *this legislation should be liberally construed in favor of property owners to protect them from liability*." (Emphasis added.) Before the rule of liberal construction may be applied, the court must first find that an unenumerated activity is substantially similar to an enumerated activity. The legislature did not intend that the courts give a liberal construction to the definition of "recreational activity"; in fact, the converse is true. *See* 1991 WIS. L. REV. at 522-23.

In *Bystery v. Village of Sauk City*, 146 Wis. 2d 247, 252, 430 N.W.2d 611, 613 (Ct. App. 1988), we said that the declaration of legislative intent in 1983 Wis. Act 418 "shows that the purpose of sec. 895.52 is the same as former sec. 29.68: to encourage landowners who might otherwise withhold their land from the use of others to make their land available for recreational activities." By including municipalities in the protection of § 895.52, STATS., the legislature has encouraged them to provide for the residents and the public a variety of outdoor activities. We said that an example was where a municipality has withdrawn a highway or sidewalk from transportation uses, in whole or in part, and devoted it to recreational activities as defined in § 895.52(1)(g), a street fair, for example. However, the legislature did not intend that a governmental body should be immune from liability where it provides outdoor recreational activities for a substantial pecuniary benefit. Therefore, I conclude that in order to consti-

tute a "recreational activity," the pecuniary benefit to a governmental body must be "minimal." Because that is not the case here, I respectfully dissent.